## LEESON v. CITY OF HOUSTON et al.*
### (No. 294–3560.)

(Commission of Appeals of Texas, Section B. June 24, 1922.)

**1. Covenants ⬅⟶100(2) — Purchaser held not entitled to recover from vendor paving installments.**

Where purchaser was given possession of premises on execution of deed placed in escrow pending collection of note transferred to vendor for such purpose, and on delivery of deed and final settlement between the parties was charged with all repairs, insurance, and interest on purchase price, and with installment assessed against the property for paving pursuant to proceedings had during interval between execution of deed and delivery thereof, and which the vendor had paid, the purchaser could not recover from vendor the amount of paving installments which subsequently became due, on theory that the paving certificates were incumbrances covered by the general warranty, since purchaser became invested with all benefits and chargeable with all burdens of ownership on execution of deed, in view of delivery of possession, and the construction placed upon the contract by the parties themselves as evidenced by the final settlement.

**2. Evidence ⬅⟶419(4)—Parol evidence admissible to show agreement between vendor and purchaser as to who should pay for future paving.**

Where there was no paving lien or paving contract or ordinance in existence when contract for purchase of property was made, parol evidence was admissible to show the real agreement of the parties as to which of the parties should pay for the pavement in case the abutting street should be paved by the city.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by the City of Houston, for the use of the Uvalde Rock Asphalt Company, against R. L. Leeson and another. Judgment for plaintiff affirmed by the Court of Civil Appeals (225 S. W. 763), and named defendant brings error. Judgments of trial court and of the Court of Civil Appeals affirmed.

Homer Stephenson, of Houston, for plaintiff in error.

E. T. Chew and B. F. Wilson, both of Houston, for defendants in error.

McCLENDON, P. J. The city of Houston brought this suit for the use of Uvalde Rock

⬅⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied November 15, 1922.

Asphalt Company against Russell Brown Company and R. L. Leeson to recover the amount of four special assessment paving certificates and to foreclose a paving improvement lien upon a lot situated upon Avondale avenue within Montrose addition to the city of Houston. The petition alleged that the certificates had been assessed against Russell Brown Company as owner, but that Leeson had purchased the property and assumed payment of the certificates. The Russell Brown Company answered and pleaded over against Leeson on his alleged assumption of the debt. Leeson in turn denied this assumption and pleaded over against Russell Brown Company upon general warranty of title from that company to him. The cause was tried without a jury, and judgment rendered in favor of the city establishing the amount of the certificates and the lien securing same, and foreclosing the lien as to both defendants. The judgment recited that the city waived any personal judgment, and therefore none was rendered in its favor. Each defendant was denied any relief as against the other defendant upon their cross-pleas. This judgment was affirmed by the Court of Civil Appeals. 225 S. W. 763.

The facts are undisputed except with reference to the matter of assumption of the lien. The Russell Brown Company entered into a contract in writing with Leeson on December 16, 1913, for the purchase of the lot. At that time no steps had been taken by the city looking toward the pavement of Avondale avenue. Russell Brown, president of defendant company, testified that—

When this contract was made, "it was talked about the street being paved; I told him [Mr. Leeson] there was some talk, and in the event it was paved he would pay for it; at that time it happened to be brought up."

The contract was in the form of a letter addressed by defendant company to Leeson, accepted by him in writing. It recited, in substance, that in accordance with a verbal agreement of that day defendant company had prepared two deeds to the property; that it was understood that defendant company was to deed the property to Leeson for the sum of $10,000 cash, at which time the latter was to be given a general warranty deed to the property; that there was then a note outstanding against the property for $5,000, bearing 8 per cent. interest; that the intention of defendant company was to pay off this note, but in event the holder refused payment Leeson was to pay $5,000 cash and assume this note, "we [defendant company] to pay the interest up to the date we deliver you the deed." It was then recited that if the note could not be paid and Leeson preferred to pay all cash defendant company would borrow $5,000 from Leeson, and execute to him its note bearing 8 per cent. interest, payable March 6, 1917, in order to offset the interest Leeson would have to pay on the $5,000 note. Then followed a recitation that Leeson had deposited with defendant company a certain note and collateral attached thereto, which he assigned to defendant company for collection. It was then provided:

"(1) In case we are able to make arrangements to take up the Coghill note, and clear the place, we are to give you a straight deed, and retain the sum of $10,000 of the moneys collected, the balance to be paid to you;

"(2) In the event we are unable to take up the Coghill note, we are to retain $5,000.00 out of the sum collected, make you a deed reciting $5,000.00 cash and the assumption of the $5,000.00 note, apply another $5,000.00 in cash out of the sum collected on a note as outlined in paragraph two, and the balance to be paid to you. * * *

"It is understood that the purchase of this property by you is contingent upon the collection by us of the note, or a part of the note, as above outlined.

"The Russell Brown Company is to pay all taxes up to and including 1913.

"You are to pay us the amount of unearned premium on the insurance policy now outstanding."

On March 16, 1914, Leeson took possession and moved his family upon the property, and on the same day defendant company prepared and signed a general warranty deed, conveying the property to Leeson for the recited consideration of $10,000, $5,000 cash and the assumption and promise to pay by Leeson of the $5,000 note referred to, and interest thereon "from this date only." This deed was placed in escrow in a bank in Houston to abide the collection of the securities which Leeson had turned over to defendant company.

On July 29, 1914, the city of Houston passed an ordinance, requiring the paving of Avondale avenue and the levying of an assessment against the property abutting thereon and its owners, and on September 12, 1914, the assessment in question was made, in accordance with which the city on October 22, 1914, issued five certificates each for one-fifth of the total amount of the paving cost assessment against each piece of property, and payable respectively one month, and one, two, three, and four years after date. On September 11, 1914, the attorneys for the asphalt company addressed a letter to Leeson, inclosing a paving contract in which they stated:

"If this is your homestead, then we want you and your wife to sign and acknowledge this contract before a notary public, as it is necessary that you sign and acknowledge same before the pavement is placed in front of your property. Work is beginning on the east end, and we hope you will rush this back as soon as possible that the work may not be delayed."

Leeson replied to this letter on September 14, 1914, as follows:

"I am returning you inclosed the contract you sent me. I would think the Russell Brown Company would be the parties to sign the contract, as the property has not been deeded to us, or I might say the deed has not been turned over to us. We have a contract for the property conditional upon the collection of a note assigned to the R. B. Co., and we would be willing to pay for the street improvements, provided we get the property, but don't care to obligate ourselves to pay it until the deal is fully consummated. If we get the property we would pay cash for the improvements. Expect to be in Houston in about ten days."

Defendant company collected the note. Leeson had left with it the latter part of February, 1915, and early in March, 1915, the deed was acknowledged and delivered to Leeson, and an adjustment of accounts between them was had. In this adjustment defendant company presented an itemized statement, which showed that the account was balanced by check to Leeson for $4,891.27. Leeson accepted this statement as correct, and gave defendant company a full receipt. This receipt was not in evidence, but Leeson testified in this regard as follows:

"Mr. Kenneth Krahl handled the final settlement for me. I signed some kind of a statement at the time I got the deed and the balance of my money; I suppose it is in the hands of the Russell Brown Company; they demanded it; they made me sign the paper before they gave me the check, that I had an entirely satisfactory settlement with them, but that was not the case; when I accepted the deed and paid the claims they asserted I thought that was the end of it; I told Mr. Krahl to make a full settlement and get rid of it."

This statement charges Leeson with the price of the place, $10,000 less $250, leaving net charge for the property $9,750. Why this $250 deduction was made is not explained. From this was deducted $5,000, the principal of the assumed note, leaving the net amount of $4,750 going to defendant company. In addition to several minor items of expense, telegrams, carpentering, water rent, etc., Mr. Leeson was also charged with the following items: Interest at 7 per cent. on this $4,750, balance from March 16, 1914, the date he went into possession of the property, to February 23, 1915, the date the collection of Leeson's securities was reported; interest on the $5,000 at 8 per cent. from March 16, 1914, to March 6, 1915; state, county, and city taxes for 1914; unearned insurance from March 16, 1914, to expiration of policy; and the first paving certificate, which had been paid by defendant company in November, 1914.

Brown testified that each of the items of expense charged to Leeson in the account had been authorized by Leeson at the time it was incurred or paid by defendant company, and that when the paving certificate was paid in November, 1914, this was done under express authorization of Leeson. He further testified that Leeson expressly agreed to the adjustment when the deed was finally delivered to him, and agreed to pay the remaining paving certificates. Leeson denied that he ever made such agreement either at the time the contract was originally made or thereafter.

No question is raised by either party with reference to the correctness of the trial court's judgment in foreclosing the paving lien upon the property. The sole issue in the case is whether the properly admitted evidence will support the judgment of the trial court, denying to Leeson recovery over against defendant company upon its covenant of general warranty. Involved in this issue is also presented the question whether parol testimony was admissible to show an agreement of the parties relating to payment or assumption of paving charges. The position taken by Leeson is that the deed passed title to him, and became effective as to its covenants as of the date of its delivery to him, at which time the paving certificates were incumbrances upon the property, and therefore covered by the general warranty, which includes a covenant against incumbrances; and that the legal effect of this warranty could not be varied by parol testimony. The Court of Civil Appeals seem to assume this position as correct, except as to the admissibility of parol evidence; the holding in that regard being that the case falls within the rule announced in Johnson v. Elmen, 94 Tex. 168, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845.

In that case the Supreme Court holds that parol evidence is admissible to show an agreement between the contracting parties at the time of the conveyance, and as a part of the contract that the covenantee should himself discharge an incumbrance. The authorities are reviewed, and the holding is declared to be supported by the better reason and the weight of authority, although there are decisions to the contrary. In arriving at this conclusion the Supreme Court hold:

"That parol evidence cannot be admitted to show merely that the parties orally agreed that a certain incumbrance should be excepted from the operation of the covenant. To admit such evidence is to violate the familiar rule that parol evidence is not admissible to vary the terms of a written contract."

The distinction between an agreement to discharge an existing incumbrance as a part of the consideration for a conveyance and an agreement that a particular incumbrance should be excepted from the covenant against incumbrances is clearly drawn in Morriss v. Hesse, 210 S. W. 710, in which it was held that a parol agreement that property conveyed under a general warranty of title was taken

subject to the possession of a tenant under an unexpired lease could not be shown. Writ of error was granted in that case, and the holding of the Court of Civil Appeals upon that question was approved in an opinion of this section of the Commission in the following language:

"We are of the opinion that the Court of Civil Appeals properly determined the question raised by the first assignment of error. Justice Moursund clearly differentiates the case of Johnson v. Elmen, 94 Tex. 168, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845, cited by plaintiff in error, from a number of other cases, in which it is held that parol evidence is inadmissible to enlarge or restrict the warranty in a deed; and we can add nothing to what he has said in his able opinion." 231 S. W. 317.

It is to be observed that at the time the original contract of sale was entered into and at the time the deed was placed in escrow there was no incumbrance upon the property for street paving, and no action had been taken by the city looking towards placing such incumbrance thereon. The testimony of Brown was to the effect that when the contract was originally made the paving was discussed, and Leeson was told that in the event the property was paved he (Leeson) would pay for it. We are inclined to the view that under the surrounding circumstances this testimony was sufficient to warrant a finding that Leeson agreed as a part of the contract and as a part of the consideration for the property that he would pay for the paving in case the city should pave the street, and that the Court of Civil Appeals correctly held that this case falls within the rule announced in Johnson v. Elmen. We have reached the conclusion, however, that the trial court's judgment denying to Leeson recovery upon defendant company's covenant of general warranty, should be sustained upon other grounds.

By the great weight of authority it is now held that, although the legal title does not pass to the vendee under a contract of sale until, actual delivery of a deed to the property still the vendee under such contract of purchase, especially where he goes into possession of the property, is invested with the equitable title from the date of the contract, or in any event, from the date he takes possession, and any increment, advantage, or enhancement to the property inures to his benefit, and any detriment, depreciation, or loss thereto without fault of either party must be borne by him. A long list of authorities supporting this view is given in a note to Sewell v. Underhill (New York Court of Appeals) 27 L. R. A. (N. S.) 233. That case and the note relate to the application of this rule to the particular matter of destruction of the property by fire pending the consummation of the contract. The writer of this note says:

"Since equity regards that as done which ought to be done, the rule is well established that where a valid, and therefore enforceable, contract for the sale of land has been made, the land becomes the property of the vendee from the execution of the contract. Consequently, as is stated in the above opinion, the great weight of authority supports the proposition that the destruction of buildings upon the land, or any deterioration of the property, between the time of the execution of such contract and the time fixed for the completion thereof, must be the loss of the vendee, and not of the vendor."

The case of Fouts v. Foudray, 31 Okl. 221, 120 Pac. 960, 38 L. R. A. (N. S.) 251, Ann. Cas. 1913C, 301, presents a close analogy to the present case. There a deed was placed in escrow to abide the consummation of a contract in writing to convey a house and lot. The house was totally destroyed by fire before the time had arrived for compliance with the conditions of the escrow. When that time arrived the purchaser refused to comply, the seller withdrew the deed from the depositary, and sued the purchaser for specific performance of the contract. The purchaser interposed the defense of failure of consideration by virtue of destruction of the house, and also urged that the amount he was to pay should be reduced to the extent of the proportionate value of the property thus destroyed. Both of these defenses were denied; the holding being that the equitable title passed when the contract was made, and that the loss must be borne by the purchaser.

The doctrine under consideration is very fully treated in Pomeroy's Equity Jurisprudence (4th Ed.), from which we give the following quotations:

"Sec. 368. The full significance of the principle that equity regards and treats as done what ought to be done throughout the whole scope of its effects upon equity jurisprudence is disclosed in the clearest light by the manner in which equity deals with executory contracts for the sale of land or chattels, which presents such a striking and complete contrast with the legal method above described. While the legal relations between the two contracting parties are wholly personal—things in action—equity views all these relations from a very different standpoint. In some respects, and for some purposes, the contract is executory in equity as well as at law; but so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the vendor and to vest it in the vendee. By the terms of the contract the land ought to be conveyed to the vendee, and the purchase price ought to be transferred to the vendor; equity therefore regards these as done: The vendee as having acquired the property in the land, and the vendor as having acquired the property in the price. The vendee is looked upon and treated as the owner of the land; and equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains

owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase money."

"Sec. 372. Another immediate and evident consequence of the principle is the equitable property created by mere agreements to purchase and sell lands. If the contract is made upon an actual valuable consideration, and complies in other respects with the requisites prescribed by equity, then, as soon as it is executed and delivered, the vendee acquires an equitable estate in the lands, subject simply to a lien in favor of the seller as security for payment of the price, while the vendor becomes equitable owner of the purchase money. There is in this case, as in the last, an equitable conversion; the vendee's interest is at once converted into real property, with all its features and incidents, while the vendor's interest is, to the same extent, personal estate."

"Sec. 116. A contract of sale, if all the terms are agreed upon, also operates as a conversion of the property, the vendor becoming a trustee of the estate for the purchaser, and the purchaser a trustee of the purchase money for the vendor. In order to work a conversion, the contract must be valid and binding, free from inequitable imperfections, and such as a court of equity will specifically enforce against an unwilling purchaser."

"Sec. 1406. The effect of an executory contract for the sale of land, in working an equitable conversion, and in clothing the purchaser with an equitable estate in the land, and the vendor with an equitable ownership of the purchase price, has already been described. As soon as the contract is finally concluded, although it is wholly executory in form, these rights and estates become fixed and vested. It follows, therefore, that the purchaser, being the equitable owner, is entitled to all the benefits and assumes all the risks of ownership."

"Sec. 1406. Note 2. From that time he takes the benefit of all subsequent improvements, increases, gains, rises in value, and other advantages happening to the property. Conversely, the subject-matter is at his risk, and he must bear all total or partial losses, from fire or other accidental cause, or from trespassers, and all depreciations in value, and other disadvantages; res perit domino. This liability is, however, subject to the important limitation that the loss or depreciation does not arise from the neglect, default, or unwarrantable delay of the vendor in carrying out the contract."

In the law of insurance the question frequently arises not merely whether the insured has any insurable interest in the property, but the character of that interest, whether that of owner or in some other capacity. The following from Joyce on Insurance (2d Ed.) § 977, is a clear statement of the law upon this phase of that question as deduced from the decisions generally:

"It is well settled by numerous decisions that a vendee or purchaser in possession under a contract for purchase or for a deed has an insurable interest. He is treated as the owner of the whole estate, incumbered only by the purchase money. Although he has the equitable title only, its loss or destruction falls upon him, and not the seller. This ownership results from the contract itself, for it is not necessary that any part of the purchase money should be paid to produce such effect."

The question arose in an early case coming before the Supreme Court of the United States. The opinion was by Chief Justice John Marshall, from which we quote:

"That an equitable interest may be insured is admitted. We can perceive no reason which excludes an interest held under an executory contract. While the contract subsists, the person claiming under it has, undoubtedly, a substantial interest in the property. If it be destroyed, the loss, in contemplation of law, is his. If the purchase money be paid, it is his in fact. If he owes the purchase money, the property is its equivalent, and is still valuable to him. The embarrassment of his affairs may be such that his debts may absorb all his property, but this circumstance has never been considered as proving a want of interest in it. The destruction of the property is a real loss to the person in possession, who claims title under an executory contract, and the contingency that his title may be defeated by subsequent events does not prevent this loss. We perceive no reason why he should not be permitted to insure against it." Columbian Ins. Co. v. Lawrence, 2 Pet. (U. S.) 46 (7 L. Ed. 335).

In the instant case the contract of sale was complete in all its parts, and fully covered all rights and liabilities of the parties as applied to the subject-matter and its status at the time the contract was entered into. When the deed was placed in escrow two changes were made in that contract, namely: First, that Leeson was to assume interest on the $5,000 incumbrance from the date of the deed instead of, as originally provided, from the date of its delivery; and, second, possession was transferred from defendant company to Leeson. From that date forward Leeson was to all intents and purposes treated as the real owner of the property in the dealings of the parties between themselves. His letter to the attorneys of the Rock Asphalt Company clearly indicates that he placed this construction upon the contract, and that the cost of paving would fall upon him if defendant company collected the note left with it for that purpose. In the final settlement between the parties, the basis of settlement was that Leeson was owner of the property from the time he went into possession. He was charged with all repairs, insurance, and interest, both on the amount of cash he was to pay defendant company as well as on the $5,000 note he assumed. In addition to this he was charged with the installment on the paving which became due in November, and was paid by defendant com-

pany. Willingly, as testified to by Russell, or. unwillingly, as testified to by himself, Leeson gave his assent to this method of adjustment, which treated him as owner of the property from the date of his possession; and he gave his receipt in writing, showing full adjustment and settlement of accounts. We do not have to resort to the testimony of witnesses as to what conversation took place between the parties to reach the conclusion that in this' settlement the parties construed their rights under the contract as imposing upon Leeson all the burdens of ownership from the date of the deed and of his possession.

In order to hold defendant company upon its covenant of general warranty we would have to hold, not only that the legal title did not pass until the deed was finally delivered, or the condition of the escrow performed, but also that the covenants of the deed related to the condition of the title as of that date. It may be conceded that the vendor would be bound to discharge any incumbrance placed upon the land, by or through him between the date of possession and the delivery of the deed, such as voluntary liens or liens of creditors. But the incumbrance in question arose independently of the action of either party. It was placed there by a sovereign power. The very theory upon which it became a charge upon the property was that the value of the property was enhanced by the paving to the amount of the assessment. This enhancement in value inured to the benefit of the owner, and for that reason he was charged with the cost of the improvement. At the time of the escrow agreement, there being no lien for paving upon the property and no contract for such paving, there was no more reason for embodying a provision covering such contingency than for any other contingency which might possibly arise before the deed was finally delivered. If we eliminate all parol testimony, the contract, viewed as of the date it was modified, as above stated, by the escrow and delivery of possession to Leeson, was that he should get, for $5,000 cash and the assumption of the principal of the $5,000 note and interest from that date, the property described in the deed free from any incumbrances then existing other than the 1914 taxes. If the city had done this paving without placing the cost upon the abutting owners, it is clear that defendant company could not have added the enhanced value of the property to the price designated in the contract. And for the same reason we think Leeson cannot charge defendant company with the cost assessed against the property for an improvement made after the contract was entered into which resulted in such enhancement. If we view the matter from the standpoint of the equities of the parties,

their rights should clearly be fixed as of the date of Leeson's possession.

Our conclusions are:

[1] First. That under the contract of sale and delivery of possession to Leeson the equitable title to the property passed to him as of the date of his possession, subject only to the condition that defendant company collect the note left with it for that purpose, and that from that date he was invested with all benefits and charged with all burdens of ownership.

Second. That the construction placed by the parties upon the contract, as evidenced by the settlement made when the deed was delivered, placed the burdens of ownership, including the paving assessment, upon Leeson from the date of his possession.

[2] Third. That in any event, since there was no paving lien or paving contract or ordinance in existence when the contract was made, parol evidence was admissible to show the real agreement of the parties upon that subject.

We conclude, therefore, that there was no error in the trial court's judgment denying recovery to Leeson on his warranty, and that the judgments of that court and of the Court of Civil Appeals should be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.