CLUB CORPORATION OF AMERICA and April Sound Management Corp., a/k/a April Sound Country Club, Appellants,

v.

CONCERNED PROPERTY OWNERS FOR APRIL SOUND, Appellee.

No. 09–93–092 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 28, 1994.

Decided Aug. 25, 1994.

Rehearing Overruled Sept. 14, 1994.

Richard A. Valdes, Page & Addison, Dallas, Dewey J. Gonsoulin, Mehaffy & Weber, Beaumont, for appellant.

Lou W. Burton, Williams, Birnberg & Anderson, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

OPINION

WALKER, Chief Justice.

The lawsuit underlying this appeal was filed by a twelve member group of persons called the Concerned Property Owners for April Sound, an unincorporated association of residential lot owners at April Sound Subdivision, a community located near Conroe, Texas. The plaintiff having prevailed at trial court level is now the appellee in this appeal. Appellee filed its original suit against six defendants: April Sound Property Owners Association, Inc., hereafter referred to as (POA), April Sound Country Club Corporation, Club Corporation of America, April Sound Management Corporation a/k/a April Sound Country Club, April Sound Recreational Corp. and J.B. Land Co., Inc. All defendants appeared and answered save April Sound Country Club Corp., a not-for-profit corporation incorporated by the Developer, which forfeited its charter in 1982, and did not appear and answer. Only Club Corporation of America and April Sound Management Corporation are appellants in this appeal.

Appellee alleges *inter alia,* that it consists of members of the POA and therefore is entitled to elect five trustees to operate the POA since all necessary prerequisites to the development of the April Sound Subdivision have been met. One absolute condition precedent to the POA's entitlement to elect trustees was to show that there were no longer any unsold building sites in the April Sound Subdivision. Appellee also sought various other forms of relief at trial level, including a Writ of Mandamus to order the POA to make its books and records available for inspection, the appointment of an auditor to audit the books and records of the defendants, now appellants, and the appointment

of a receiver to operate the POA and conduct an election of a new Board of Trustees. Appellee also sought a Temporary Restraining Order and Temporary Injunction enjoining appellants from destroying or altering their books and records or expending any funds in the defense of this lawsuit. Basically, appellee contends that all conditions precedent to its having a voice and vote in the POA have been met.

Factually, in 1972, the April Sound Property Owners Association, Inc., was established as a non-profit corporation. From 1972 to 1977, Sections One through Ten of the April Sound Subdivision were platted and recorded among the deed records of Montgomery County, Texas. During this same period of time these residential tracts of land were subject to a development plan whereby J.B. Land Co., Inc. and United Savings Association of Texas FSB entered into a joint venture agreement to develop these tracts. Pursuant to that plan, a standard contractual agreement was signed with various persons to purchase property in the various sections of the subdivision.

By–Laws for the POA were adopted on April 1, 1973, which provided that no member of the POA shall be entitled to vote as long as building sites in April Sound remain unsold. Article III, Section 6 of those By–Laws provides:

> *Voting:* So long as any of the building sites in April Sound remain unsold by Developer, no member shall be entitled to vote except the initial Trustees....

Article I, Section 3(b) of the By–Laws defines "building site" as follows:

> (b) The term "building site" means each of the lots as designated on the said plat....

Article I, Section 3(f) of the By–Laws defines the term "unsold" as follows:

> The term "unsold" when used with reference to a building site in April Sound shall mean that the title to such building site has not been conveyed out of Developer and that Developer is actively engaged in activities designed to promote the sale of the building site to any person or entity not affiliated with Developer.

On September 1, 1992, the trial court held a hearing at which time counsel for all parties advised the court that they had reached an agreement that each party would file cross-motions for summary judgment on one issue only, that the one issue question for the trial court was whether or not there are any unsold lots in April Sound, and, depending on the court's determination, the court would sever that issue from the remainder of the case so that either party could appeal.

The September 1, 1992 hearing was transcribed and we set forth excerpts from that proceeding:

> MR. MAZZONE (attorney for appellants): Judge, here's what we thought we'd do: We would file cross motions for summary judgment on one question. And that is, whether or not there are unsold lots in April Sound....
>
> \*   \*   \*   \*   \*   \*
>
> THE COURT: So are you telling me at this point in time you want to stop what we're doing today and proceed with this summary judgment motions, then decide after I've ruled on that what we're going to do, where we're going from there?
>
> MR. BURTON (attorney for appellee): Well, it boils down to if the summary judgment is granted in favor of plaintiffs then its over.
>
> THE COURT: Well, it's not totally over, it seems to me because you've raised a lot of questions in your pleadings that over and above whether or not there's going to be elections—whether there's going to be an election held in which each lot owner is entitled to vote on a trustee to create a new board of trustees to operate the Property Owners Association. You've got the question about these funds that have been collected over the years, have they been mismanaged or not mismanaged. What about any attempts to convey the assets of the Property Owners Association, was that valid? If not, should those be returned—should those assets be returned to the Property Owners Association. Should all funds that have been received by CCA or April Sound Management Corporation that are still held in the "mainte-

nance fund", either the property portion or the recreation portion then be turned over to POA. I mean there are a lot of issues that this isn't going to resolve.

MR. BURTON: No, I misspoke. What I mean is the issue of whether the property owners are entitled—the only thing we're addressing by this is whether the property owners are entitled to have an election immediately called whereby the property owners elect their POA Board of Directors. All other issues will be resolved after that is resolved.

THE COURT: Is that a promise?

MR. MAZZONE: I think we should be clear as a bell on the record that not only have we agreed to this one step of filing motion for summary judgement (sic) but we both agreed that we will be asking—we will both be asking for a severance of this part of the case into a separate case. So that in walking the scenarios through, if you rule in favor of Mr. Burton's clients, the plaintiffs, you would then sever the case. You would then either have a trial on attorney fees if he wants one or no trial and we will proceed directly to final judgement (sic) and part of the final judgement (sic) would be an order of an election.

They would then have an election. The new board would be elected. The new board would decide whether they wanted to proceed with the case that would stay the other case, the severed case, decide whether they want to proceed with that case. If they don't want to proceed then the concerned property owners, who are the plaintiffs now, could decide to proceed derivatively as they are now or they might decide to follow their newly elected board, either way. Hopefully that other case will be resolved.

On the other hand, if you rule in our favor, in the defendant's favor, we will also be asking for a severance. We will be asking for a trial on the issue of whether the lots are actively being marketed and we will ask after that trial, for a final judgment on the issue of control. But we

will resolve this path that we've decided to take by agreement, will resolve the question of control absolutely and finally. And the only thing you'll have to deal with as I see it now is the severed case. You know, if there's a new board, they may not want to proceed with it. It may become moot.

Appellee's posturing of this appeal is quite different from what the record before us actually shows. It is appellee's contention that this is an appeal from a Final Judgment and not merely an appeal from a partial summary judgment. We disagree with appellee's version of the effect of the trial court proceedings.

TEX.R.CIV.P. 166a provides the terms under which a summary judgment may be granted. Rule 166a(c) provides that the motion for summary judgment shall state the specific grounds therefore and that no oral testimony shall be received at the hearing. The summary judgment is to be based solely upon the pleadings, admissions, affidavits and stipulations of the parties and issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.[1]

A summary judgment may not be granted, as a matter of law, on a cause of action not addressed in the summary judgment proceeding. *Johnson v. Rollen,* 818 S.W.2d 180 (Tex.App.—Houston [1st Dist.] 1991, no writ). Furthermore, pleadings do not constitute summary judgment proof. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

In our case the parties stipulated that there was only one issue for the trial court to resolve, that being, whether there were any unsold building sites within April Sound Subdivision. Whether any lot within the April Sound Subdivision remains "unsold" necessarily requires a legal analysis of those concepts known as "legal title," "equitable title" and contracts which are "executory" in nature. To best evaluate these concepts we must review that summary judgment evidence before the trial court.

---

1. For example, appellee's motion for partial summary judgment contains no summary judgment evidence concerning the appointment of an An-

cillary Receiver, the amount or reasonableness of attorney's fees, or the amount or reasonableness of costs.

Appellants' motion for partial summary judgment contained an affidavit by J.B. Belin, Jr., President of J.B. Land Co., Inc. and April Sound Recreational Corp. We set forth portions of the Belin affidavit as follows:

(4) As ultimate successor of the rights of Southwest Savings Association, Bank United of Texas FSB (formerly known as United Savings Association of Texas and also formerly known as United Savings Association of Texas FSB) is the developer of April Sound, pursuant to Article I, Section 3(e) of the By–Laws.

Hereafter, the "Developer".

(5) Attached hereto as Exhibit "B" is a true and correct copy of an agreement entered into by and between United Savings Association of Texas and James Rogers & Co., Inc. (the "Agreement"). Except for the price (including installment amounts) and the block and section description, the Agreement contains the same terms and conditions that are included in all of the agreements entered into by the Developer with respect to all patio home building sites in April Sound (hereafter the "April Sound Agreements").

(6) *The Developer currently holds title to at least 290 building sites in April Sound....* (emphasis supplied)

(7) Without considering certain reserve tracts, access easements, and property in Section 11, the property that the Developer owns in April Sound falls into essentially three categories:

Category (1)–property that had been the subject of an April Sound Agreement which was cancelled before title was conveyed out of the Developer;

Category (2)–property that is currently the subject of an April Sound Agreement (but that is still owned by the Developer, i.e., title has not been conveyed out of the Developer); and

Category (3)–property that had been conveyed out of the Developer but then was foreclosed on by the Developer.

(8) Most of the purchasers under the April Sound Agreements have not fulfilled those of their obligations under the Agreements which would entitle them to a conveyance of a building site. In other words, most of the purchasers have not fulfilled one or more of their obligations under Paragraph 3 of the April Sound Agreements: paid full consideration and demonstrated that they are ready, willing and able to commence construction. This is the case with respect to most of the unsold building sites referred to above. Until the purchasers fulfill these obligations, the Developer is not obligated to convey any building sites; i.e., is not obligated to convey legal title to any building site.

(9) *There are approximately 11 unsold building sites in the first category* (agreements cancelled), and the Developer is actively trying to sell these building sites. *There are well over 260 unsold building sites in the second category* (agreements still in effect); and *there are approximately 17 unsold building sites in the third category* (foreclosures), and the Developer is actively trying to sell these building sites. However, as noted, with respect to most of these building sites (all categories) the conditions to obtaining legal title have not been fulfilled. (emphasis supplied)

It is of utmost importance that we discuss the "Agreement" referred to in the Belin affidavit. This "Agreement" shall be referred to as the April Sound Agreement. This April Sound Agreement is a contract entered into or to be entered into between United Savings Association of Texas, as seller and the purchaser. This April Sound Agreement, even when effectively entered into by seller and purchaser, gives only to the purchaser or potential purchaser the surface rights to a lot to be designated within a certain block and section of April Sound. The Agreement provides:

For the consideration and under the terms and considerations set forth, Seller agrees to sell and convey to Purchaser, and Purchaser agrees to purchase ... the surface and surface rights to a lot to be designated by Seller (as provided in Paragraph 3 below) out of: Block ---, Section ---, April Sound, a subdivision in Montgomery County, Texas....

Therefore, under the terms of this April Sound Agreement, the Purchaser could not specifically enforce the Agreement to require the Seller to sell *any* specific lot.

Paragraph 3 of this April Sound Agreement provides in pertinent part:

Seller shall designate the lot to be conveyed to Purchaser when the full consideration, together with interest as above provided, has been paid by Purchaser; and, when electrical, gas, water and sewer utilities and streets are completed to the above-described Block; and when Purchaser has demonstrated to the satisfaction of Seller the Purchaser is ready, willing, and able to commence construction upon the Property so conveyed. Evidence that Purchaser is ready, willing, and able to commence construction of a Patio home upon conveyance of a lot shall include Purchaser's submitting to Seller: completed plans and specifications for the construction of a Patio home, which plans and specifications have been approved by the Architectural Control Authority provided for in the Restrictions which encumber the Property; an executed contract with a builder who is capable of the construction of the Patio home as called for by the above-mentioned plans and specifications; and a commitment or commitments for such financing (either interim construction financing, permanent financing, or both) as will be necessary for Purchaser to prosecute to completion the construction of the improvement as called for in the plans and specifications referred to above.

Paragraph 15 of the April Sound Agreement provides:

It is expressly understood that this agreement shall not be construed as a conveyance or sale of the property above described but shall be construed as a mere agreement to sell the property set out and *the relation created between the Seller and Purchaser shall be that of landlord and tenant* until such time that the Seller delivers to Purchaser its warranty deed as herein stated. (emphasis supplied)

Additionally, the agreement provides that the "rights and interest of Purchaser hereunder shall not be transferred or assigned without the written consent of Seller first having been obtained. Any attempt by Purchaser to transfer or assign this contract, without Seller's written consent, shall be void."

Finally, for our purposes, the agreement provides in paragraph 9, that:

In the event Purchaser fails to pay any two consecutive monthly installments ..., or defaults in any of the provisions of this contract, or fails to correct any violation of the restrictive covenants referred to above within 30 days after written notice of such violation has been given to Purchaser, then Seller, at its option may cancel this Contract by giving written notice of such cancellation to Purchaser. Upon this contract being cancelled by reason of any such default by Purchaser, all payments made by Purchaser prior to that time shall be forfeited by Purchaser as liquidated damages for such default *and as rental charges for the use of the Property by Purchaser;* and Purchaser here agrees that the amount forfeited is fair and reasonable; and it is further agreed that upon cancellation of this contract, the purchaser in possession of the above-described property shall be and become a *tenant at sufferance* of Seller and shall thereafter have no further interest in the property.... (emphasis added)

A primary function of summary judgment proceedings is to avoid conventional trial on clearly unmeritorious claims or untenable defenses. It is not the purpose of summary judgment proceedings to deprive litigants of their right to a full conventional trial if there exist genuine issues of material facts. TEX. R.CIV.P. 166a; *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Ghazali v. Southland Corp.,* 669 S.W.2d 770 (Tex. App.—San Antonio 1984, no writ). It is the harshness of the summary judgment remedy that requires the burden of proof to be properly placed upon the movant to show the trial court through uncontroverted evidence that as a matter of law there are no genuine issues of material fact. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678; *Aldridge v. Young,* 689 S.W.2d 342 (Tex.App.—Fort Worth 1985, no writ). All conflicts of evidence tending to support the

position of the non-movant must be resolved in their favor for purposes of summary judgment proceedings. *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176 (Tex.1972); *Aldridge, supra,* at 344.

As we see it, the key issue before the trial court was whether or not merely executing the April Sound Agreement conveyed any "title," (legal or equitable) to appellee. Appellee's contention to the trial court was that, as a matter of law, execution of the April Sound Agreement between appellee and appellants constituted a contract of sale under which the lots were sold and equitable title to the lots were conveyed out of the developer. On this particular point, appellee's case authority stems from a single source: *Leeson v. City of Houston,* 243 S.W. 485 (Tex.Comm'n App.1922, judgm't adopted). Appellants counter *Leeson* with their own line of cases also apparently stemming from a single source: *Johnson v. Wood,* 138 Tex. 106, 157 S.W.2d 146 (1941). The *Johnson* case was also a Commission of Appeals opinion, but said opinion was adopted by the Texas Supreme Court. Cases in which the *opinion* has been adopted have the full authority of a Texas Supreme Court decision. *See* Texas Rules of Form (eighth ed.), subchapter 5.2.1. Texas Law Review Assn. 1992. Our research has turned up a very concise and eminently reasonable discussion of the conflict between the positions expressed in the *Leeson* and *Johnson* cases. The discussion is taken from *In re Finley,* 138 B.R. 181, 182–184 (Bankr.E.D.Tex.1992), and is reproduced, in pertinent part, as follows:

> The seminal case in modern Texas jurisprudence on this issue is *Johnson v. Wood,* 138 Tex. 106, 157 S.W.2d 146 (Tex.Comm'n App.1941, opinion adopted). In *Johnson,* the court found that purchaser of an executory contract possess only an equitable right to consummation of that contract upon performance, i.e., full payment under the terms of the contract. At the time of performance "that [equitable right] ripen[s] into an equitable title ..." *Id.,* 157 S.W.2d at 148. As explained by the court

in *In re: Waldron,* 65 B.R. 169, 173 (Bankr.N.D.Tex.1986) until a purchaser under a contract for deed fully performs, the only interest that the purchaser possesses is "his right to perform under the contract."

\* \* \* \* \* \*

The holding in *Johnson* has been precedent in Texas for over 50 years and has been followed by numerous courts. [extensive list of citations omitted]

Debtor has referred this Court to the recent case of *Kimsey v. Burgin,* 806 S.W.2d 571 (Tex.App.—San Antonio 1991, writ denied). In *Kimsey,* the court held that a purchaser under a contract for deed is vested with equitable title from the day of the contract. *Id.* at 576.... However, this Court does not find the holding in *Kimsey* to be convincing.

The *Kimsey* holding is premised on the holding of *Leeson v. City of Houston,* 243 S.W. 485 (Tex.Comm'n App.1922, judgm't adopted). In *Leeson,* the court held that: "by the great weight of authority it is now held that, although the legal title does not pass to the vendee under a contract of sale until actual delivery of a deed to the property still the vendee under such contract of purchase, especially where he goes into possession of the property, is invested with the equitable title from the date of the contract, or in any event, from the date he takes possession, and any increment, advantage, or enhancement to the property inures to his benefit, and any detriment, depreciation, or loss thereto without fault of either party must be borne by him." *Id.* at 488. The other cases cited in support of the court's holding in *Kimsey* are also based on the *Leeson* holding. [footnote omitted] [2] However, the Court finds the precedential value of *Leeson* and its progeny to be questionable.

Both *Johnson* and *Leeson* were decided by the Texas Commission of Appeals, an adjudicative body formed to alleviate the workload of the higher courts of the State of Texas. *See* Texas Law Review, Texas

---

2. Although we have omitted the two cases cited in the *Finley* footnote, we observe that one of the cases, *City of Garland v. Wentzel,* 294 S.W.2d 145

(Tex.Civ.App.—Dallas 1956, ref'd n.r.e.), is also relied upon by appellee in its brief.

Rules of Form, chap. 5 at pp. 9–11 (7th ed. 1990). The precedential value of a case decided by the Texas Commission of Appeals depends on whether the opinion issued was adopted, the holding was approved, or the judgment was adopted by the Supreme Court of the State of Texas. If an opinion was adopted it is treated precedentially as having the full authority of a Texas Supreme Court decision. *Id.* However, in the latter two cases the precedential scope of a Commission of Appeals opinion is more limited. The approval of a holding "signifies that the court approved the judgment and adopted each specific holding of the Commission, but did not necessarily approve its reasoning." *Id.* The adoption of a judgment of the Commission "indicates that the court approved neither specific holdings nor reasonings of the Commission." *Id.*

In *Johnson,* the opinion of the Commission was adopted by the Supreme Court of the State of Texas and has the same force and effect as having been issued by that body. On the other hand, in *Leeson,* the Texas Supreme Court merely adopted the Commission's judgment without regard for the Commission's holding or reasoning. This Court notes that neither the *Kimsey* case nor the cases cited as support by the *Kimsey* court address the holding in *Johnson.* Furthermore, this Court notes that the holding in *Johnson* was reached approximately 20 years after the holding *Leeson.* To the extent that there is a conflict, this Court can come to no other conclusion than that the holding in *Johnson* implicitly overrules the holding in *Leeson.* Accordingly, this Court finds that *Johnson* is the controlling precedent standing for the proposition that a contract for deed is executory under the laws of the State of Texas and that a purchaser under a contract for deed possesses only an equitable right under the contract instead of an equitable title.

While we recognize that a holding by a bankruptcy judge has little, if any, authoritative significance for this Court, we do feel that the opinion in *In re Finley* is well-reasoned and grounded upon case law that is of precedential value for this Court. It is clear to us, therefore, under *Johnson* and its progeny, that mere execution of the April Sound Agreement without performance under the terms did not convey equitable title, much less legal title, and consequently under the terms of the By–Laws set out above, there are lots that remain "unsold" in the April Sound Subdivision. We hold that the trial court erred in concluding and declaring that "there are no 'unsold' building sites or lots within April Sound as that term is defined in the April Sound By–Laws[.]" We sustain appellant's first point of error. As the issue of "unsold" lots or building sites was the only issue severed from the main case, we reverse and render in appellants' favor only on said issue.

**REVERSED AND RENDERED.**