**SONCY ROAD PROPERTY, LTD, Amarillo Cottonseed Hull Co., Inc., Golden Spread Energy Inc., City Machine & Welding, Inc., Krause Landscape, Inc., and Lance Plunk, Plaintiffs,**

**v.**

**George CHAPMAN, Karen Corp., and City of Amarillo, Defendants.**

**No. CIV.A.2–01CV–0379.**

United States District Court, N.D. Texas, Amarillo Division.

April 25, 2003.

malice or willful intent in this case.

Joe W. Hayes, Brian P. Heinrich, Templeton Smithee Hayes Field Young & Heinrich, Amarillo, TX, for Karen Corp.

Michael H. Loftin, Daniel Leon Schaap, Underwood Law Firm, Amarillo, TX, for City of Amarillo.

Joe L. Lovell, Lovell Lovell Newsom & Isern, Amarillo, TX, Nancy J. Stone, Law Office of Nancy J. Stone, Amarillo, TX, for Amarillo Cottonseed Hull Co., Inc.

G.E. Carlisle, Amarillo, TX, pro se.

Geneva Carlisle, Amarillo, TX, pro se.

Anna Bell Batenhorst, Levelland, TX, pro se.

Gary Rankins, Amarillo, TX, pro se.

Jimmie Ann Batenhorst, Levelland, TX, pro se.

Lee Roy Rea, Bushland, TX, pro se.

Linda Rankins, Bushland, TX, pro se.

Amarillo 3-B Inc., Amarillo, TX, pro se.

Richard C. Naylor, Law Office of Richard C. Naylor, Amarillo, TX, for Amarillo 3-B, Inc.

## MEMORANDUM AND ORDER

MARY LOU ROBINSON, District Judge.

Plaintiffs own land abutting a railroad corridor which was abandoned by the Burlington Northern and Santa Fe Railway Company (BNSF) railroad.[1]  Defendants

1. On March 21, 2001, Amarillo Cottonseed Hull, Inc. conveyed the title in the Cottonseed Hull property to Soncy Road, Ltd., a Texas Limited Partnership.  After this case was filed, Amarillo Cottonseed Hull's property

Karen Corp. and the City of Amarillo, as "Buyer," entered into a contract to buy the abandoned railroad corridor for $506,000.00. Pursuant to the contract, the railroad agreed to convey, and did convey, a specific separate portion of the corridor, the Western Corridor, to Karen Corp. and a different portion, the Eastern Corridor, to the City. In fact, Karen Corp. paid the entire consideration and paid an additional $100,000.00 to the City. Plaintiffs challenge the transaction and allege that it deprived them of property rights in the Western Corridor in violation of the due process and taking provisions of the United States Constitution. They contend *inter alia* that under Texas statutes, Karen Corp. should be required in equity to convey the portion of the corridor abutting each Plaintiff's land to that Plaintiff for an apportioned amount of the consideration paid by Karen Corp.. The case was tried to the Court without a jury.

## TEXAS STATUTES

Texas statutory law controls how a City may dispose of property. Texas Local Government Code § 272.001 provides, in relevant part:

(a) Except for the types of land and interests covered by Subsection (b), ... before land owned by a political subdivision of the state may be sold or exchanged for other land, notice to the general public of the offer of the land for sale or exchange must be published in a newspaper of general circulation in ... the county in which the land is located.... The notice must include a description of the land, including its location, and the procedure by which sealed bids to purchase the land or offers to exchange the land may be submitted.

The notice must be published on two separate dates and the sale or exchange may not be made until after the 14th day after the date of the second publication.

(b) The notice and bidding requirements of Subsection (a) do not apply to the types of land and real property interests described by this subsection and owned by a political subdivision. The land and those interests described by this subsection may not be conveyed, sold, or exchanged for less than the fair market value of the land or interest unless the conveyance, sale, or exchange is with one or more abutting property owners who own the underlying fee simple. The fair market value is determined by an appraisal obtained by the political subdivision that owns the land or interest or, in the case of land or an interest owned by a home-rule municipality, the fair market value may be determined by the price obtained by the municipality at a public auction for which notice to the general public is published in the manner described by Subsection (a). The notice of the auction must include, instead of the content required by Subsection (a), a description of the land, including its location, the date, time, and location of the auction, and the procedures to be followed at the auction. The appraisal or public auction price is conclusive of the fair market value of the land or interest, regardless of any contrary provision of a home-rule charter.

This subsection applies to:

(1) narrow strips of land, or land that because of its shape, lack of access to public roads, or small area cannot be

was foreclosed upon by the trustee under a deed of trust. A state court suit has been filed to set aside the foreclosure. During this trial, the 251st District Court, Potter County, Texas, entered a temporary injunction enjoining the trustee from selling or encumbering or otherwise disposing of the property pending final trial of the merits of the state court suit.

used independently under its current zoning or under applicable subdivision or other development control ordinances;

\* \* \* \* \* \*

(c) The land or interests described by Subsection (b)(1) and (2) may be sold to:

(1) abutting property owners in the same subdivision if the land has been subdivided; or

(2) abutting property owners in proportion to their abutting ownership, and the division between owners must be made in an equitable manner.

(d) This section does not require the governing body of a political subdivision to accept any bid or offer or to complete a sale or exchange.

TEX. LOC. GOV'T CODE ANN. § 272.001(a)—(d) (Vernon 1999 & Supp. 2002).

## FACTS

This lawsuit centers around the sale of a railroad corridor owned by BNSF running from SW 7th Street in Amarillo, Texas, west to Bushland, Texas, for approximately 11.5 miles. The corridor is roughly 100 feet wide along its entire length. Negotiations for the sale took place over more than an eighteen month period.

On May 31, 1996, a notice of intent to abandon the corridor was published in a local newspaper. BNSF used Catellus Management Corporation to broker the sale of the corridor. Catellus had Steve Rogers appraise the corridor. Mr. Rogers appraised the corridor at $506,000.00 as of June 18, 1997.

Dee Miller, as Trustee of the Chapman Children's trusts, was initially interested in acquiring the railroad corridor from Coulter Street west to Soncy Road because it adjoined property that was owned by Defendant George Chapman or one of the Chapman entities. Chapman sought to acquire the railroad property from BNSF.

However, BNSF would not sell the railroad property to Chapman. BNSF preferred to sell to a governmental entity. BNSF offered the entire corridor to the City.

The City was interested in acquiring only the Eastern Corridor, approximately 3.5 miles running from SW 7th Street west to Coulter Street, for the development of a linear park. It was not willing to pay the stated price for the corridor. BNSF was not willing to sell just the part within the City limits.

City Manager John Ward and the Director of Community Services J.D. Smith met with George Chapman and Dee Miller in November 1997 to explore whether the City would assist Chapman in obtaining an easement across the corridor that he needed to develop his property for a cinema. At this meeting, they discussed the purchase of the corridor. The City and Chapman were aware of the price asked by the railroad, and Chapman expressed his willingness to pay the entire price and let the City have the land east of Coulter Street.

The corridor was formally abandoned on January 12, 1998.

In early 1998, Mathew Hickey of Catellus called John Ward who responded that the City was not interested in purchasing the corridor. Nevertheless, on February 17, 1998, Hickey faxed a proposed contract to Ward, offering the entire corridor to the City. J.D. Smith faxed the contract to Dee Miller two days later.

On February 23, 1998, Chapman obtained the easement he was seeking for the cinema.

On February 25, 1998, Ward counter-offered $250,000 for the entire corridor, stating

> We felt confident that we could sell all of the railroad property west of Coulter to this property owner (or the highest bid-

der) for at least the $506,000 asking price, and then end up with the portion that we need for the park at no cost. Since last August however, the developer that owns the property in question has made substantial progress without the right of way, and it is our understanding that the BNSF has granted him access easements across the right of way. We believe this greatly diminishes the need for the developer to buy the remaining right of way, and consequently we believe the value has been lowered accordingly.

Hickey would not lower the asking price.

On March 21, 1998, the City distributed and published a request for proposal as follows:

The City of Amarillo, Texas a municipal corporation located in Potter and Randall Counties is seeking proposals for a joint venture on the purchase of property to be disposed of by the Burlington–Northern and Santa Fe Railway Company. The Burlington–Northern and Santa Fe Railway Company property to be disposed of ranges in widths of from 50 to 100 feet and extends from approximately SW Seventh Avenue within the Amarillo city limits to the east edge of Bushland, Texas, a distance of approximately 11.5 miles.

The City of Amarillo proposed keeping the ownership of the portion of the railroad right-of-way extending from SW Seventh Avenue west to the east right-of-way line of Coulter Street a distance of approximately 3.5 miles. . . . The remaining property from Coulter Avenue West will become the property of the city's partner in this joint venture.

This joint venture proposal is subject to the following conditions.

1. The City of Amarillo has the right to accept a proposal or reject all proposals.

\*      \*      \*      \*      \*      \*

7. A division of interests is conditioned on the City of Amarillo obtaining the right-of-way from the Burlington–Northern and Santa Fe Railway Company.

The applicant can propose participation in this joint venture by a cash payment, land, improvements to property or a combination of the above. The City of Amarillo will review all proposals and determine the best proposal of those submitted. The successful applicant will be required to enter into a contract with the City of Amarillo providing for the details of the proposal and damages resulting from the applicant's withdrawal from the contract. The contract must be completed within thirty (30) days of the award of the request for proposals to the successful applicant.

No Plaintiff submitted a proposal.

George Chapman's proposal was submitted on April 21, 1998. Chapman proposed taking title to the entire corridor and conveying the Eastern Corridor to the City. The proposal stated that Chapman was

willing to contribute to the joint venture the cash sum of $605,000.00. It is my understanding that part of these funds will be used to purchase the right of way from the railroad and any remaining funds, after the purchase of the right of way, would be used by the City for the development of the property acquired from the railroad. Under this arrangement, I would take title to all the railroad right of way and upon closing the transaction, I would convey to the City of Amarillo the 3.5 miles of right of way from SW 7th Avenue to Coulter Street at no cost to the City. I would retain title to the remaining 8 miles of right of way.

\*      \*      \*      \*      \*      \*

I will be willing to enter into a specific contract with the City of Amarillo upon the City's acceptance of this proposal. No contract was entered into between the City and Chapman.

Thereafter Chapman, with the acquiescence of the City, engaged Dallas counsel to negotiate a contract acceptable to the railroad.

On May 1, 1998, the City Attorney Merrill Nunn sent a letter to Hickey expressing concern over language regarding future easements and an indemnification provision in the proposed contract sent to him earlier by Catellus. Nunn stated that "[w]e are interested in contracting to purchase the right of way and would like to sign the contract and begin title examination as soon as possible." Hickey returned the contract incorporating the changes Nunn requested on August 27, 1998

On June 24, 1999, Steve Rogers conducted a second appraisal for Catellus and valued the corridor at $585,000.00, a $79,000.00 increase from the June 18, 1997 appraisal.

Dee Miller did not want title to the Western Corridor in the Chapman Children's trust because of environmental and title concerns. Karen Corp. was formed on September 3, 1999, to acquire the Western Corridor.

On October 5, 1999, the City Commission met and approved the Real Estate Purchase and Sale Agreement which "sets forth the terms and conditions under which the City will purchase the abandoned railroad right of way along Plains Boulevard from 7th Avenue to Coulter Street."

On October 6, 1999, John Ward for the City and Karen Chapman for Karen Corp. signed the Real Estate Purchase and Sale Agreement. The same day Karen Corp. secured two cashier's checks-one payable to BNSF for $506,000 and one payable to the City for $100,000.

The pertinent parts of the agreement provide:

The undersigned parties, hereinafter called "Buyer", offers to purchase from The Burlington Northern and Santa Fe Railway Company hereinafter called "Seller", all of the Seller's right, title and interest in and to that parcel of land situated in or near the City of Amarillo, County of Potter and State of Texas, shown on maps marked Exhibit "A", and further described on Exhibit "B, Tracts 1 and 2" [2]

...Buyer agrees to pay Seller the purchase price of Five Hundred and Six Thousand and No/100 Dollars ($506,000) for Property....

\*　　\*　　\*　　\*　　\*　　\*

Seller shall convey or caused to be conveyed, all of Seller's right, title and interest in the property, if any, to Buyer by Deed Without Warranty subject to the exceptions and reservations ... herein.

\*　　\*　　\*　　\*　　\*　　\*

BUYER MUST CLEARLY SET FORTH FULL AND CORRECT NAMES OR PARTY OR PARTIES TO WHOM TITLE WILL BE CONVEYED, THEIR ADDRESS, THEIR RELATIONSHIP, IF ANY, AND WHETHER CONVEYANCE IS TO BE IN JOINT TENANCY OR OTHERWISE, AND IF A COMPANY, WHETHER IT IS A PARTNERSHIP, TRUST, TRUSTEE OR CORPORATION, ADDRESS OF PRINCIPAL OFFICE AND STATE OF INCORPORATION

This offer consisting of _____ pages and by said Exhibit "A and B, Tracts 1 and

2.　No Exhibit A is attached to the copy of the executed contract admitted in this case.

2" attached hereto, is made a part hereof, had been made, signed and sealed in duplicate by the Buyer this 6th day of October, 1999.

**Buyer's name as it is to appear on deed for Tract 1** CITY OF AMARILLO

\*    \*    \*    \*    \*    \*

**Buyer's name as it is to appear on deed for Tract 2** KAREN CORP.

On October 13, 1999, BNSF signed the Real Estate Purchase and Sale Agreement. The same day BNSF deeded the Western Corridor to Karen Corp. and deeded the Eastern Corridor to the City by deeds without warranty.

Karen Corp. paid BNSF the $506,000.00 purchase price for the entire railroad corridor property. Karen Corp. also paid the City of Amarillo $100,000.00 as part of the transaction.

The City never obtained an appraisal of the railroad property. There was no auction of any interest the City may have acquired in any part of the corridor.

## CONTENTIONS

Plaintiffs contend that, by the Real Estate Purchase and Sale Agreement, the City jointly with Karen Corp. acquired an interest in the entire railroad corridor and sold or exchanged the interest in the Western Corridor for less than fair market value to Karen Corp. in violation of Section 272.001(b).[3] They seek in the alternative a declaration that the sale or exchange is void, a finding that Karen Corp. is holding the Western Corridor in constructive trust for Plaintiffs, damages for deprivation of property rights or an equitable remedy compelling Karen Corp. to convey the portion of the corridor abutting each Plaintiff's land to that plaintiff for an apportioned part of the alleged purchase price.

Defendants contend that Plaintiffs have no constitutionally-protected rights in any portion of the corridor and that the City never owned or acquired an interest in the Western Corridor or sold an interest in the Western Corridor to Karen Corp. Defendants contend that all claims, including pendent state law claims, should be dismissed for lack of jurisdiction.

## SECTION 272.001(b)

There are no Texas cases construing the interest, if any, that abutting landowners have in parcels of land to which Subsection (b) of 272.001 apply.

■ Assuming *arguendo* 1) that Subsection (b) applies to the Western Corridor; 2) that the City, jointly with Karen Corp., acquired an interest in the Western Corridor; 3) that the City sold or exchanged its interest to Karen Corp.; and 4) that it did so for less than fair market value, the sale or exchange is voidable under Texas law. *Bowling v. City of El Paso*, 525 S.W.2d 539 (Tex.Civ.App.-El Paso), *writ ref'd n.r.e.*, 529 S.W.2d 509 (Tex.1975) (reserving the question whether a failure to comply with the statutory requirements renders the transaction void or voidable). The abutting landowners would have standing to bring suit in Texas state court to vacate the sale. *Walker v. City of Georgetown*, 86 S.W.3d 249, 253 (Tex.App.-Austin 2002, pet. denied). That does not mean, however, that Plaintiffs would have a property interest that would support a due process or takings claim under the United States Constitution.

---

**3.** Plaintiffs contend

Plaintiffs maintain that the City and Chapman and/or Karen Corp. entered into a joint venture, joint enterprise, single business enterprise or similar arrangement to acquire the entire Railroad Corridor, and then "divided amongst themselves" and that "such arrangement between the 'Joint Venturers' did effect a conveyance, sale or exchange of the City's interest in the entire Railroad Corridor."

(Pls.' trial br. p. 5.)

■ To establish either a substantive or a procedural due process violation by claiming denial of a property right, the claimant must first establish a constitutionally protected property right. The existence of a property right must be established by reference to state law. *Bryan v. City of Madison*, 213 F.3d 267 (5th Cir. 2000). To be constitutionally protected, an alleged property right or interest requires that the claimant have more than an abstract need or desire for it, but rather a legitimate claim to it. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Mallette v. Arlington County Employees' Supplemental Retirement System II*, 91 F.3d 630, 634 (4th Cir.1996). The 14th Amendment protects only property interests a person has already acquired as opposed to those in which it had an expectancy.

■ Plaintiffs do not have the requisite constitutionally protected property interest. Subsection (b) gives the City the option to sell to abutting landowners in proportion to their abutting ownership for less than fair market value. It cannot sell to others for less than fair market value, but it is not compelled to sell at all or to sell piecemeal. It could sell to another purchaser for fair market value. Assuming the truth of the facts which Plaintiffs allege, Plaintiffs could not have more than a mere expectancy in the Western Corridor.

## THE REAL ESTATE PURCHASE AND SALE AGREEMENT

Every cause of action alleged by Plaintiffs is predicated on its contention that Karen Corp. and the City jointly acquired an equitable right or title to the entire corridor upon execution of the Real Estate Purchase and Sale Agreement by BNSF and the tender of consideration by Karen Corp. Plaintiffs rely on the Agreement's description of "Buyer" as Karen Corp. and the City of Amarillo.

*In Johnson v. Wood*, 138 Tex. 106, 107, 157 S.W.2d 146, 148 (1941), Wood and Johnson entered into a written contract by the terms of which Wood agreed to convey property to Johnson upon payment of Johnson to him of the agreed purchase price. The Court held that upon the payment of the purchase price, Wood became vested with an equitable title to the property sufficient to enable him to maintain an action in trespass to try title. In *Johnson,* the Court explained that a purchaser has only an equitable right to consummation of the contract upon performance, thus full payment under the contract is required before the equitable right ripens into equitable title.

■ Other Texas cases hold that the vendee is vested with equitable title from the date of the contract, although legal title does not pass under a contract of sale until delivery of a deed to the property. *Leeson v. City of Houston*, 243 S.W. 485, 488–90 (Tex. Comm'n App.1922, judgm't adopted). However, Plaintiffs have cited no case, and the Court has found no case, in which the Texas courts have held that a person or entity which was not entitled to legal title upon consummation of a contract acquired equitable title upon execution of the contract or tender of consideration.

In the case before this Court, the contract does not give the City the right to receive title to the Western Corridor upon consummation of the contract. That is true regardless of whether Karen Corp. or the City paid the consideration. Once the consideration was tendered, BNSF was obligated to execute a deed without warranty to the Western Corridor to Karen Corp. and a deed without warranty to the Eastern Corridor to the City. Karen Corp. was then vested with equitable title to the Western Corridor. The City was vested with equitable title to the Eastern Corridor.

Because the City did not acquire either an equitable interest or legal title in the Western Corridor, this Court would enter judgment for the Defendant if federal jurisdiction were proper.

## CONCLUSION

Because Section 272.001 does not give Plaintiffs a protected property right in the portion of the railroad abutting their property, and because it was not necessary for the Court to make factual findings to make that determination, the Plaintiffs' cause of action is not intertwined with questions which the Court must address to determine its jurisdiction. Plaintiffs have not stated a viable federal claim. Under those circumstances, it is not appropriate in this case for the Court to exercise supplemental jurisdiction of Plaintiffs' state law claims. All claims will be dismissed for lack of jurisdiction. Defendants will take nothing on their claims for attorneys' fees.

It is so ORDERED.