**Ross M. CULLINS, Sr., and Dandy Ruth Cullins, Appellants/Cross Appellees,**

v.

**Jonathan B. FOSTER, Appellee/Cross Appellant.**

No. 14–03–00870–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 2005.

Lawrence S. Rothenberg, Houston, TX, for appellants.

Christopher L. Ashby and Michael O. Whitmire, Houston, TX, for appellee.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

This case involves a boundary dispute between appellants/cross-appellees, Ross

M. Cullins, Sr., and Dandy Ruth Cullins, and appellee/cross-appellant, Jonathan B. Foster. The Cullinses sued Foster, asserting claims for adverse possession, mistake, and trespass. Foster counter-claimed, asserting claims for trespass to try title, trespass, conversion, and violation of Texas Natural Resources Code section 151.051.[1]

The trial court granted two partial summary judgments resolving all liability issues against the Cullinses and in favor of Foster. Following a jury trial on Foster's damages and attorney's fees, the trial court rendered judgment on the jury's damages verdict, but increased the jury's award of attorney's fees.

Determining Foster *did* conclusively prove he had title to the disputed parcel of land by the time of trial, we affirm the judgment to the extent it granted Foster possession of, and title to, the disputed parcel. We also affirm the judgment against the Cullinses on all their claims.

Determining Foster *did not* conclusively prove he had title to the disputed parcel of land at the time the Cullinses committed the allegedly injurious acts giving rise to Foster's remaining claims, we reverse the judgment as to those claims. We also reverse that part of the judgment awarding Foster attorney's fees. We sever these claims and remand them to the trial court.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 1995, the Cullinses purchased approximately one acre of land from Billie Selena Sepulvado Foster (Billie Foster), Foster's stepmother. According to the legal description attached to the deed, the property has boundaries of approximately 186 feet on the north and south, and approximately 233 feet on the east and west.[3] At the time of the sale, Billie Foster owned the property immediately to the east. A chain link fence ran parallel and to the east of the property the Cullinses purchased, cutting across the Cullinses' property at the southeast corner. The fence apparently connected with fences to the north and south of the purchased property. The Cullinses claim that, at the time of sale, they believed they were purchasing all of the property contained within the fences.

In December 1995, Ross Cullins was digging postholes to straighten the fence line at the southeast corner. After Foster informed Cullins that Cullins did not own the property, he ceased digging. In 1996, the Cullinses asked Billie Foster to execute a corrected deed, which would have extended the Cullinses' eastern boundary to the fence line. She declined to do so.

The land between the Cullinses' eastern boundary and the fence (*i.e.*, the "disputed property") contained a grove of pine trees, cultivated by Foster's father. From 1995 until 2002, the Cullinses used the area and placed a barbecue and trailer for their lawn mower there. In 2002, the Cullinses began removing the pine trees, a process which continued from about April 21 until May 16. On May 16, 2002, Foster destroyed part of the fence; and on May 24, 2002, allegedly staked out a new line.

---

1. TEX. NAT. RES.CODE ANN. § 151.051 (Vernon Supp.2004–05).

2. Given our resolution of Foster's claims, we do not reach the Cullinses's issue relating to the exclusion of evidence at the jury trial or Foster's issue regarding rendition of judgment on the jury's damages verdict.

3. According to the legal description, the property comprises .9949 acres, more or less. A survey map dated November 2, 1995 indicates the property comprises .9952 acres.

On May 28, 2002, the Cullinses sued Foster, asserting multiple causes of action, including a claim to the property by adverse possession, mistake, and trespass. They sought unspecified actual and consequential damages and declaratory and injunctive relief. Foster counterclaimed, alleging trespass to try title, trespass, conversion, and a claim under Texas Natural Resources Code section 151.051[4] and sought judgment for title to, and possession of, the disputed area, monetary damages, attorney's fees, and injunctive relief.

On June 5, 2002, Billie Foster executed a warranty deed granting Foster the tract of land immediately east of the Cullinses' property. The deed had an "effective" date of April 29, 1996.[5]

At her deposition, Billie Foster testified she sold Foster the property in November 1995 for $6,000. Billie Foster also recalled that the payments were due on a monthly basis, but did not recall how much Foster paid or how many months he paid. She recalled the purchase price had been paid in full around April 1996. She did not have a written agreement with Foster to sell the property until the first part of 2002.

When deposed, Foster testified he paid "around $250.00 a month" for the property until it was paid off. He could not recall the purchase price or how many payments he made. He testified he made payments until he "got it paid off. I'm not sure how the math works out on that." In his affidavit, Foster attested, "On or about April 29, 1996, Mrs. Billie Foster sold the eastern tract to me. Since that time, I have been the owner in fee simple of that portion of the property."

Foster moved for summary judgment on his counterclaims and against the Cullinses on their claims. Regarding the Cullinses' adverse possession claim, he argued the Cullinses had not paid property taxes and did not obtain the property under a duly registered deed. Regarding the claim of mistake, he argued the cause of action did not apply to unilateral mistake and was barred by limitations. Regarding trespass and declaratory judgment, he argued he conclusively proved the Cullinses had no right to the disputed area via deed or adverse possession. In relation to his counterclaims, Foster complained about the Cullinses' use of the land and their cutting the trees. He also asserted his ownership of the property by virtue of the June 5, 2002 deed. In support of his motion, Foster provided the following documents: (1) the November 6, 1995 warranty deed from Billie Foster to the Cullinses with the attached legal description; (2) a November 2, 1995 survey showing the fence line in relation to the area described by metes and bounds in the November 6, 1995 warranty deed; (3) a letter reflecting the Cullinses' 1996 request that Billie Fos-

---

4. Texas Natural Resources Code section 151.051(a) provides:

> A person who harvests standing timber with knowledge that the harvesting is without the permission of the owner of the standing timber and a person who causes another person to harvest standing timber without the permission of the owner of the standing timber are jointly and severally liable to the owner for damages in an amount equal to three times the market price of the timber harvested without permission.

TEX. NAT. RES.CODE ANN. § 151.051(a) (Vernon Supp.2004–05).

5. Foster's father had bequeathed 7.36 acres out of a 9.36 acre tract to Foster, bequeathing the remaining two acres to Billie Foster. The June 5, 2002 deed from Billie Foster to Foster describes the land Billie Foster is then conveying to Foster in terms of the 9.36 acres, except for those portions of the 9.36 acres previously (1) bequeathed to Foster and (2) conveyed to the Cullinses.

ter execute a correction deed which would have included the property extending to the fence; (4) a letter indicating Billie Foster declined to execute a correction deed without additional consideration; (5) the June 5, 2002 deed; and (6) deposition testimony and affidavits relating to the sale and transfer of the property described in the June 5, 2002 deed.

The Cullinses responded to Foster's summary judgment motion and also moved for partial summary judgment against Foster on his counterclaims. They alleged that the June 5, 2002, deed was ineffective to vest ownership in Foster at the time of their injurious actions on the property. Foster responded, in part, that he had obtained equitable title to the disputed property when he completed all payments to Billie Foster.

The trial court granted summary judgment in favor of Foster "on all defensive issues" against the Cullinses and on Foster's counterclaims of trespass, trespass to try title, conversion, and violation of Texas Natural Resources Code section 151.051.[6] The damages and attorney's fees questions were then submitted to a jury. A non-unanimous jury found the following damages: loss of the trees' market value at the mill, $1,000; cost of cure, $4,700; loss of the trees' intrinsic value, $0.00; loss of past rental value of the land, $0.00. The jury found $5,000 to be a reasonable attorney's fee through trial of the case, but found zero fees for an appeal to the court of appeals, a petition to the supreme court, or grant of the petition.

Foster filed a request for attorney's fees and a motion for judgment notwithstanding the verdict (JNOV). The trial court

rendered judgment on the damages verdict[7] and awarded Foster the following attorney's fees: $15,000 through trial; an additional $5,000 if the case were appealed to the court of appeals; and an additional $5,000 if a petition for review were filed in the supreme court.

The Cullinses filed a motion for new trial. Foster filed a motion for new trial and motion to modify the judgment. The motions were overruled by operation of law. Both parties appeal.

## II. Discussion

### A. Summary Judgment Issues

1. The Cullinses' Ten-year adverse possession claim

In their first issue, the Cullinses argue the trial court erred in granting summary judgment against them on all their claims because Foster did not move for summary judgment on their claim of adverse possession under the ten-year statute. See Tex. Civ. Prac. & Rem.Code Ann. § 16.026 (Vernon 2004). Foster argues (1) the Cullinses did not plead a claim under the ten-year statute, (2) he addressed the ten-year statute in his reply to the Cullinses' response to his summary judgment motion, and (3) the Cullinses' claim fails for the reasons set forth in his reply.

■ A summary judgment movant's attempt to address claims in a reply to the non-movant's response is insufficient to comport with the requirements of Rule 166a(c). Guest v. Cochran, 993 S.W.2d 397, 402–03 (Tex.App.-Houston [14th Dist.] 1999, no pet.); see Tex.R. Civ. P. 166a(c). Accordingly, we consider whether the Cul-

---

6. According to the trial court's judgment, Foster withdrew his counterclaims for declaratory judgment and permanent injunction.

7. Per statute, the trial court trebled the award of the trees' market value at the mill, awarding Foster $3,000. See Tex. Nat. Res.Code Ann. § 151.051(a) (Vernon Supp.2004–05).

linses pleaded a claim under the ten-year statute.

■ Foster did not specially except to the Cullinses' pleadings; therefore, we construe the pleadings liberally in favor of the Cullinses and uphold their petition as to a cause of action reasonably inferred from what is stated even if an element of the claim is not specifically alleged. *Gillespie v. Scherr,* 987 S.W.2d 129, 132 (Tex. App.-Houston [14th Dist.] 1998, pet. denied) (citing *Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex.1993)). The Cullinses' adverse possession claim reads as follows:

> Alternatively, Plaintiffs and Plaintiffs' predecessors in interest have been in actual, open notorious, exclusive, hostile, and adverse possession of the entirety of the property encompassed by the fencing along the perimeter of Plaintiffs' Property since prior to November 6, 1995, which precedes the filing of this lawsuit by more than five (5) years. Plaintiffs have used and enjoyed the property, paid taxes and held all of said real property under a claim of right, in good faith, and under a duly recorded Warranty Deed (Exhibit "A") purporting to convey this land.

The pleading contains no reference to ten years; instead, the specific reference is to five years.[8] Additionally, the pleading lists elements of the five-year adverse possession statute, which provides:

> A person must bring suit not later than five years after the day the cause of action accrues to recover real property

held in peaceable and adverse possession by another who:

> (1) cultivates, uses, or enjoys the property;
>
> (2) pays applicable taxes on the property; and
>
> (3) claims the property under a duly registered deed.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.025(a) (Vernon 2004).

Even construing the pleadings liberally in favor of the Cullinses, we hold they do not set forth a cause of action under the ten-year statute. We overrule the Cullinses' first issue.

2. SUMMARY JUDGMENT ON THE CULLINSES' CLAIMS AND FOSTER'S COUNTERCLAIMS

### a. Issues and standard of review

In their second and third issues, respectively, the Cullinses argue the trial court erred (a) in granting summary judgment against them on their claims for adverse possession, trespass, mistake and declaratory relief, and (b) in granting summary judgment in favor of Foster on his counterclaims for trespass, trespass to try title, conversion, and violations of Texas Natural Resources Code section 151.051. The Cullinses' motion for summary judgment challenged the proof of ownership (the June 5, 2002 deed) Foster relied on in part to establish his counterclaims.[9]

■ When parties file competing motions for summary judgment and the trial court grants one motion and denies the other, this court may consider the propriety of the denial as well as the grant.

---

8. *The Cullinses direct this court's attention to the phrase, "since prior to November of 1995" as evidence they were tacking their claim to that of their predecessor in interest, i.e., Billie Foster. At that time Billie Foster owned the adjoining property. The Cullinses do not explain how Billie Foster could have possessed the property adversely to herself.*

9. The Cullinses alleged their motion was brought under both subsections (b) and (i) of Texas Rule of Civil Procedure 166. The only summary judgment proof attached to their motion was the June 5, 2002 deed.

*Lidawi v. Progressive County Mut. Ins. Co.,* 112 S.W.3d 725, 729 (Tex. App.-Houston [14th Dist.] 2003, no pet.). If the issue raised is based on undisputed and unambiguous facts, we may determine the question presented as a matter of law. *Id.* We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one denying both motions. *Id.* If, however, resolution of the issues rests on disputed facts, summary judgment is inappropriate, and we should reverse and remand for further proceedings. *Id.*

The movant for summary judgment has the burden to show there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubts in his favor. *Id.* at 548–49.

■■■ A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *see Geiselman v. Cramer Fin. Group, Inc.,* 965 S.W.2d 532, 535 (Tex.App.-Houston [14th Dist.] 1997, no writ). A defendant moving for traditional summary judgment assumes the burden of showing the plaintiff has no cause of action against him as a matter of law. *Levesque v. Wilkens,* 57 S.W.3d 499, 503 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Traditional summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

### b. Challenge to summary judgment against the Cullinses on their claims

In their second issue, the Cullinses challenge the summary judgment against them on all of their affirmative claims. The Cullinses' claims included adverse possession and the derivative claims for trespass and declaratory relief. In addition, the Cullinses pleaded mistake.

■■■ ***Adverse possession and derivative claims.*** To establish a claim of adverse possession under the five-year statute, a party must claim the property under a duly registered deed. TEX. CIV. PRAC. & REM.CODE ANN. § 16.025(a)(3); *McAllister v. Samuels,* 857 S.W.2d 768, 776 (Tex.App.-Houston [14th Dist.] 1993, no writ). "In order that the five years statute be invoked, it is . . . essential that the land described in the deed should coincide with the land held in possession. . . ." *Brokel v. McKechnie,* 69 Tex. 32, 33, 6 S.W. 623, 624 (Tex.1887); *see McAllister v. Samuels,* 857 S.W.2d 768, 776 (Tex.App.-Houston [14th Dist.] 1993, no writ) (rejecting plaintiffs' adverse possession claim when their deed did not purport to show their ownership of any portion of lot which they claimed by adverse possession). The following summary judgment evidence conclusively establishes that the 1995 warranty deed, the basis of the Cullinses adverse possession claim, does not coincide with the land they claim to hold in possession: (1) the metes and bounds description of the property in the 1995 warranty deed from Billie Foster to the Cullinses; (2) the survey dated November 2, 1995, showing the location of the fence in relation to the property defined by the metes and bounds description; (3) the Cullinses' 1996 request to Billie Foster that she execute a correction deed that would have included the property extending to the fence; and (4) Billie Foster's refusal to do so.

With the exception of mistake, all the Cullinses' claims rest on their adverse possession claim. Because that claim fails as a matter of law, their remaining claims resting on adverse possession also fail.

*Mistake.* In the trial court, the Cullinses alternatively pleaded mistake and sought reformation of their deed "should the Court find that Plaintiffs' deed did not convey title to the entirety of the property encompassed by the fencing along the boundaries of Plaintiffs' Property." In his summary judgment motion, Foster defended against mistake on two grounds: (1) the action was outside the four year statute of limitations, and (2) the doctrine did not apply to unilateral mistake.[10]

 The four-year statute of limitations governs a suit for reformation of a deed. *Brown v. Havard,* 593 S.W.2d 939, 943 (Tex.1980); *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon 2004). The discovery rule may extend limitations until the party seeking reformation knew, or in the exercise of reasonable diligence should have known, of the mistake in the deed. *Escamilla v. Estate of Escamilla,* 921 S.W.2d 723, 727 (Tex.App.-Corpus Christi 1996, writ denied). The summary judgment proof showing the Cullinses' 1996 request to Billie Foster—asking her to execute a correction deed to include the property extending to the fence—establishes the Cullinses knew of the alleged mistake in 1996. They did not file suit until 2002, six years later. Thus, Foster conclusively established that limitations bars the Cullinses' claim of mistake.

In sum, Foster conclusively negated the Cullinses' adverse possession claims and any derivative claims. He also conclusively established his limitations defense to reformation based on mistake. We overrule the Cullinses' second issue.

### c. Foster's counterclaims

 In their third issue, the Cullinses argue the trial court erred in granting Foster's motion for summary judgment on Foster's counterclaims for trespass to try title, trespass, conversion and violation of Natural Resources Code section 151.051. To establish each of his counterclaims, Foster was required to establish title to, ownership of, or right of possession in, the disputed property. *See* Tex. Nat. Res.Code Ann. § 151.051 (Vernon Supp.2004–05) (setting forth liability of person who harvests timber without permission of "owner"); *Rogers v. Ricane Enters., Inc.,* 884 S.W.2d 763, 768 (Tex.1994) (stating plaintiff in trespass to try title action must recover on strength of his own title); *Hunt v. Baldwin,* 68 S.W.3d 117, 131 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (stating conversion is the unauthorized and wrongful assumption and exercise of dominion and control over personal property of another, to exclusion of, or inconsistent with, owner's rights); *Russell v. Am. Real Estate Corp.,* 89 S.W.3d 204, 209 (Tex.App.-Corpus Christi 2002, no pet.) (stating trespass requires only proof of interference with the right of possession).[11] Foster's summary judgment proof included (1) the June 5, 2002 deed, showing an "effective" date of April 29, 1996; (2) Foster's deposition testimony stating

---

10. On appeal, the Cullinses do not address the second ground. *See Rogers v. Cont'l Airlines, Inc.,* 41 S.W.3d 196, 199 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (stating when summary judgment does not state the specific grounds on which it was granted, party appealing from the judgment must show

each of the independent arguments alleged in the motion is insufficient to support the judgment.

11. At oral argument, the Cullinses' counsel conceded ownership was the only liability element at issue on Foster's counterclaims.

he paid around $250.00 per month, but could not recall the purchase price or how many payments he made, (3) Foster's affidavit attesting that Billie Foster sold him the property "[o]n or about April 29, 1996"; and (4) Billie Foster's deposition testimony that she sold Foster the property in November 1995 for $6,000, recalled the purchase price had been paid in full about April 1996, but did not have a written agreement with Foster to sell the property until the first part of 2002 and could not recall how much Foster paid or how many months he paid.

As they did in the trial court, the Cullinses argue, in part, that the summary judgment proof established Foster "did not obtain a valid interest in the property or a valid conveyance until the grantor [Billie Foster] executed and delivered the deed in June of 2002." In support, they cite *Burgess v. Easley*, 893 S.W.2d 87 (Tex. App.-Dallas 1994, no writ). In *Burgess*, the court had to decide whether the parties were married when the husband's rights to the property at issue vested, thereby making the property community property. *Id.* at 90. The court explained:

> An instrument conveying real property "must be subscribed *and* delivered by the conveyor...." TEX. PROP.CODE ANN. § 5.021 (Vernon 1984) (emphasis added). Without evidence to the contrary, the law presumes a grantor delivers a deed on the date of execution and acknowledgement. *Hicks v. Loveless*, 714 S.W.2d 30, 32 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *Lichtenstein v. F & M Nat'l Bank*, 372 S.W.2d 716, 718 (Tex. Civ.App.-Dallas 1963, no writ). When a grantor places a deed within the grantee's control, intending it to operate as a conveyance, the grantee's rights in the property vest. *See Steffian v. Milmo Nat'l Bank*, 69 Tex. 513, 518, 6 S.W. 823, 824 (1888). The grantor's delivery of a deed is as necessary as the grantor's

signing of a deed. *See id; McGowen v. Montgomery*, 248 S.W.2d 789, 792 (Tex. Civ.App.-Amarillo 1952, no writ). What constitutes delivery of a deed is a question of law. Whether there has been a delivery is a question of fact. *Kuhn v. Downs*, 208 S.W.2d 154, 155 (Tex.Civ. App.-Waco 1948, writ ref'd n.r.e.).

*Id.* at 90–91.

In the trial court, Foster did not dispute that there was "no document immediately filed in any official governmental records in April 1996 (or for several years thereafter) to clarify that he assumed control of the Property upon completing all of the required payments." Foster argued, however, he had obtained "equitable title" when he completed all payments.

On appeal, Foster does not reassert his equitable title argument. Instead, he maintains that the Cullinses are reiterating "red herrings previously made at the trial court level." He refers to the Cullinses' having "implied there is something sinister about the fact that the property transaction between [a]ppellee and his mother occurred in 1996, but the appropriate deed reflecting that fact was not filed until 2002." Finally, without citation to authority, Foster contends the Cullinses, by virtue of having sued him and not Billie Foster, are estopped from arguing the invalidity of that transaction.

■ A plaintiff in a trespass to try title suit may rely on a title acquired after the institution of suit, if he asserts such title by an amended pleading. *Ballard v. Carmichael*, 83 Tex. 355, 359–60, 18 S.W. 734, 735 (1892); *Young v. Harbin Citrus Groves*, 130 S.W.2d 896, 898 (Tex.Civ.App.-San Antonio 1939, writ ref'd). By the time Foster filed his amended counterclaim on August 30, 2002, he had legal title to the property described in the June 5, 2002 deed.

By the June 5, 2002 deed, Billie Foster conveyed to Foster—with the exception of two tracts—a piece of land described by metes and bounds. The two excepted tracts were (1) the tract she had conveyed to the Cullinses, and (2) a tract Foster's father had previously bequeathed to Foster. As discussed above, Foster's summary judgment proof conclusively establishes Billie Foster did not convey the disputed property to the Cullinses. The disputed property is therefore included in the description of the property conveyed to Foster by the June 5, 2002 deed. We conclude Foster conclusively proved ownership of the disputed property as of June 5, 2002. Therefore, in his action for trespass to try title, he was entitled to title to, and possession of, the disputed area, as prayed for in his amended counterclaim.

Foster, however, also claimed rental damages by virtue of his trespass to try title action. In addition, he pleaded and sought summary judgment on claims for conversion, trespass, and violation of Texas Natural Resources Code section 151.051, which provides for damages for unauthorized harvesting of timber. *See* TEX. NAT. RES.CODE ANN. § 151.051(a). It is undisputed the Cullinses' actions giving rise to these claims occurred before June 5, 2002. ▮▮▮ "[A] plaintiff in a trespass to try title suit may recover on the strength of an equitable title as well as a legal one."

*Neeley v. Intercity Mgmt. Corp.,* 623 S.W.2d 942, 951 (Tex.App.-Houston [1st Dist.] 1981, no writ) (citing *Johnson v. Wood,* 138 Tex. 106, 157 S.W.2d 146 (1941)). "Equitable title may be shown when the plaintiff proves that he has paid the purchase price and fully performed the obligations under the contract. Upon such performance, he becomes vested with an equitable title to the property which is sufficient to allow him to maintain his action in trespass to try title." *White v. Hughs,* 867 S.W.2d 846, 849 (Tex.App.-Texarkana 1993, no writ) (citing *Johnson,* 138 Tex. 106, 157 S.W.2d 146).[12]

With regard to Foster's claims based on injury to the disputed property, the question is whether Foster conclusively proved he owned the disputed property at the time the Cullinses committed the acts injuring that property. *See Ceramic Tile Int'l, Inc. v. Balusek,* 137 S.W.3d 722, 724 (Tex.App.-San Antonio 2004, no pet.) (stating right to sue for the injury to real property is a personal right belonging to the person owning the property at the time of the injury). We conclude Foster's summary judgment proof did not conclusively establish he had equitable title to, and thereby ownership of, the disputed property at the time of the Cullinses' allegedly injurious acts.

Foster presented the following summary judgment proof supporting an inference he

12. In *Graves v. Diehl,* this court referred to a conflict in the case law regarding whether a purchaser receives equitable title from the date of the contract of sale or whether he possesses only an equitable right, which does not ripen into equitable title until he has fully performed under the contract. 958 S.W.2d 468, 471–72 (Tex.App.-Houston [14th Dist.] 1997, no pet.). In the context of the nuisance suit that was then before it, the *Graves* court concluded it need not resolve the conflict. *Id.* at 472. The court did note, however, that two courts had resolved the conflict to their satisfaction. *Id.* at 472 n. 4 (citing *In re Finley,* 138 B.R. 181, 182–84 (Bankr.E.D.Tex.1992); and *Club Corp. of Am. v. Concerned Prop. Owners for April Sound,* 881 S.W.2d 620, 625–26 (Tex.App.-Beaumont 1994, writ denied)). Both courts concluded the purchaser under contract for deed possesses only an equitable right, rather than equitable title. *See Finley,* 138 B.R. at 184; *Club Corp. of Am.,* 881 S.W.2d at 626. This is the rule set forth in *Johnson v. Wood,* 138 Tex. 106, 157 S.W.2d 146, 148 (1941). In the trial court, Foster argued he obtained equitable title when he had made full payment for the property.

had equitable title by April 1996:(1) Billie Foster's deposition testimony recalling Foster had paid the purchase price in full around April 1996; (2) Foster's affidavit, in which he stated he had been owner of the property since April 29, 1996; and (3) the June 5, 2002 deed showing an "effective" date of April 29, 1996.

Foster's summary judgment proof, however, also included the following: (1) Billie Foster's deposition testimony that she sold Foster the property in November 1995 for $6,000, but could not recall (a) the amount of Foster's monthly payments, (b) how much he paid, or (c) how many months he paid; and (2) Foster's deposition testimony that he paid "around $250.00 a month" for the property until it was paid off, but also stating he could not recall (a) the purchase price or (b) how many payments he made. If Foster purchased the property in November 1995 for $6,000 and paid $250.00 per month, he would have paid off the purchase price around November 1997, well after April 1996, although still before the Cullinses cut the trees.

Finally, the summary judgment proof included (1) Billie Foster's deposition testimony that she did not have a written agreement with Foster to sell the property until the first part of 2002; and (2) the June 5, 2002 deed, which was executed on that date. This proof, coupled with the conflicts in the deposition testimony set out above, supports yet a third inference, *i.e.*, that Foster did not have either equitable or record title of the disputed property until June 2002, after the injurious acts of which Foster complained.

A fact issue exists when conflicting inferences may be drawn from uncontroverted summary judgment proof. *Mauricio v. Tex. Builders Ins. Co.*, 929 S.W.2d 638, 640 (Tex.App.-San Antonio 1996, no writ); *see also Bottoms v. Smith*, 923 S.W.2d 247, 250 (Tex.App.-Houston [14th Dist.] 1996, no writ) (stating fact issue is presented if one may draw conflicting inferences from deposition and affidavit of same party in opposition to summary judgment motion). Thus, given the conflicting inferences set forth above, there is a genuine issue of material fact regarding Foster's ownership of the disputed property when the injurious acts occurred. Accordingly, we hold the trial court erred when it granted summary judgment in favor of Foster on his claims for conversion, trespass, and violation of Texas Natural Resources Code section 151.051, and his claim for trespass to try title to the extent he was seeking relief other than title to, and possession of, the disputed property.

We sustain the Cullinses' third issue with regard to Fosters' claims for conversion, trespass, and violation of Texas Natural Resources Code section 151.051, and his claim for trespass to try title to the extent he was seeking relief other than title to, and possession of, the disputed property. We remand those claims to the trial court.

We overrule the Cullinses' third issue regarding Foster's claim for title to, and possession of, the disputed property. We affirm the trial court's judgment to the extent it awarded Foster possession of, and title to, the disputed property.

### B. Damages Issue

In his first issue in his cross-appeal, Foster challenges the trial court's rendition of judgment on the jury's damages verdict. As set forth above, we have concluded the trial court erred in granting summary judgment in favor of Foster on the liability claims giving rise to the damages he now challenges. It is therefore premature to address the damages issues.

## C. Attorney's Fees [13]

### 1. INTRODUCTION

The jury returned a verdict finding $5,000 to be reasonable attorney's fees for prosecuting the trespass-to-try title claim and adverse-possession claim through the trial of the case. The jury found zero dollars for an appeal to the court of appeals, a petition to the supreme court, or the grant of a petition by the supreme court. Following post-verdict motions, the trial court rendered judgment awarding Foster attorney's fees of $15,000 through trial, an additional $5,000 if there were an appeal to the court of appeals, and an additional $5,000 if a petition for review were filed in the supreme court.

In his second issue, Foster argues, "The trial court erred in failing to award the proper amount of attorney's fees to Cross–Appellant Foster. The final judgment entered by the trial court is erroneous as a matter of law as well as being against the great weight and preponderance of the evidence." [14] He requests this court to render judgment for attorney's fees in the amount to which his expert testified, *i.e.*, $47,707.19 for services through trial, $12,000 for the current appeal, $7,000 if a petition for review is filed, and $5,000 if the petition is granted. In the alternative, he requests a new trial on all damages claims, including attorney's fees.

In their fifth issue, the Cullinses argue that, because the reasonableness of attorney's fees is a fact issue for the jury to decide, the trial court erred in disregarding the jury's verdict on attorney's fees and granting Foster's motion for judgment not withstanding the verdict. The Cullinses also argue the trial court erred (1) in awarding *any* fees because Foster failed to segregate the causes of action for which fees are recoverable from those for which fees are not recoverable (issue four), and (2) in refusing to allow the Cullinses' attorney to testify and rebut Foster's evidence on attorney's fees (issue six).

We first address the Cullinses' challenge to the alleged failure to segregate. We then turn to Foster's challenges to the JNOV and to the factual sufficiency of the evidence supporting the jury's verdict. Finally, we address the Cullinses' argument for reinstatement of the jury's verdict. Because of our resolution of these issues, we need not address the Cullinses' challenge to the exclusion of their evidence.

### 2. THE PURPORTED FAILURE TO SEGREGATE

 In issue four, the Cullinses argue the trial court erred in awarding any fees because Foster failed to segregate recoverable from non-recoverable fees. The Cullinses, however, did not object at trial to the expert's testimony or to the jury instruction on the grounds of failure to segregate. [15] They therefore waived this

13. Despite remanding Foster's claims which rest on equitable title, we reach the attorney's fees issue in this case because, based on his record title to the property, Foster prevailed against the Cullinses on their adverse possession claims against him and, in part, on his trespass to try title action against them. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.034(a) (Vernon 2004).

14. In his motion for new trial, Foster argued the evidence conclusively proved the amounts of reasonable attorney's fees to which his

expert testified and "[a]ny amounts awarded less than those figures are against the great weight and preponderance of the evidence and are manifestly unjust."

15. The jury instruction read, in part: "What is a reasonable fee for the services of FOSTER'S attorney in this case for prosecuting the trespass-to-try title claim and adverse-possession claim?" Thus, under the instruction, the jury was limited to finding reasonable fees for the trespass-to-try title claim and adverse-possession claims only. As discussed below,

complaint. *See Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 389 (Tex.1997); *Hruska v. First State Bank,* 747 S.W.2d 783, 785 (Tex.1988); *Cont'l Dredging, Inc. v. De-Kaizered, Inc.,* 120 S.W.3d 380, 397 (Tex. App.-Texarkana, 2003, pet.denied). We overrule the Cullinses' issue four.

### 3. THE JUDGMENT NOTWITHSTANDING THE VERDICT

#### a. *Legal standards and standard of review*

In his second issue, Foster argues, in part, that the trial court erred in not granting his JNOV, requesting that the court award attorney's fees in the amount to which his expert testified. Foster pleaded for attorney's fees under Texas Civil Practice and Remedies Code section 16.034, which provides in relevant part:

> In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court may award costs and reasonable attorney's fees to the prevailing party.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.034(a) (Vernon 2004).

▆▆▆▆ Section 16.034 grants the trial court discretion to award attorney's fees. *Pierce v. Gillespie,* 761 S.W.2d 390, 397 (Tex.App.-Corpus Christi 1988, no writ); *see also Terrill v. Tuckness,* 985 S.W.2d 97, 111 (Tex.App.-San Antonio 1998, no pet.) (stating, under section 16.034, attorneys fees may, at trial court's discretion, be awarded in suits for the possession of real property involving claim under record title). Ordinarily, an appellate court will not reverse an award of attorney's fees resting within the sound discretion of the trial court without a showing of an abuse of that discretion. *See Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990) (per curiam). Nevertheless, even though the trial court has discretion in awarding attorney's fees, the reasonableness of the fees is generally a question of fact for the jury's determination. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998) (construing Texas Civil Practice and Remedies Code section 37.009, which provides "court may award costs and reasonable and necessary attorney's fees as are equitable and just"); *see also Stewart Title Guar. Co. v. Aiello,* 941 S.W.2d 68, 73 (Tex.1997) (stating award of appellate attorney fees is question of fact for the jury, and declining to disturb jury's decision to award less than was requested).

▆▆▆▆ A JNOV on the question of reasonable fees is proper only if no evidence supports the jury's finding. *See Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227–28 (Tex.1990); *Stamp-Ad, Inc. v. Barton Raben, Inc.,* 915 S.W.2d 932, 938 (Tex.App.-Houston [1st Dist.] 1996, no writ) (applying *Mancorp* standard in reviewing JNOV on attorney's fees). No evidence exists, and the trial court should render a JNOV, when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the trial court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990).

▆▆▆▆ If the jury makes a negative finding in answer to a question, it means

the Cullinses, did cross-examine Foster's ex-

pert on the issue of segregation of fees.

the party with the burden of proof has failed to carry its burden. *Burns v. Resolution Trust Corp.,* 880 S.W.2d 149, 154 (Tex.App.-Houston [14th Dist.] 1994, no writ). A trial court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes the issue. *Id.; see also Cain v. Pruett,* 938 S.W.2d 152, 160 (Tex.App.-Dallas 1996, no writ) (stating party with burden of proof at trial is entitled to JNOV on a particular issue only if evidence establishes that issue as a matter of law).

 To determine whether the JNOV on attorney's fees was proper in this case, we review only the evidence supporting the jury's finding and disregard all contrary evidence. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex. 1988). If more than a scintilla of evidence supports the jury finding, the JNOV is erroneous. *Garcia v. Ins. Co. of Pa.,* 751 S.W.2d 857, 858 (Tex.1988). Furthermore, if the evidence is factually insufficient, as opposed to legally insufficient, the trial court may not grant a JNOV, but is limited to granting a motion for new trial. *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 594 (Tex.1986).

### b. The evidence before the jury

The only evidence on attorney's fees was the testimony of Kevin McEvily, a Houston lawyer, who testified regarding the reasonableness of the fees attorney Christopher Ashby's firm had charged Foster. McEvily testified he had examined Ashby's bills, looked over the case file, and questioned Ashby about what was involved in the preparation of the case. According to McEvily, Ashby was billing Foster $200 per hour, and Foster's bill through November 2002 amounted to $46,225.05.

McEvily testified he asked Ashby whether Ashby had segregated out charges for which attorney's fees would not be appropriately charged to Foster's adversary. McEvily testified Ashby had segregated out those fees, resulting in the $46,000 being reduced to $41,707.19 for charges up to trial. Adding the fees incurred at trial raised the $41,707.10 to $47,707.19. McEvily then testified Foster would incur an additional $12,000 in fees if the case were appealed to the court of appeals, another $7,000 if the Cullinses filed a petition for review, and another $5,000 if the supreme court granted review. McEvily also testified that the time spent and the charges billed were reasonable and necessary for the services performed.

On cross-examination, McEvily testified it would not have been appropriate for him to have undertaken the fee segregation, and he had relied on what Ashby had told him in that regard. Although McEvily "reviewed the bills thoroughly," he admitted he did not review all the documents in the case. It was McEvily's understanding that attorney's fees were appropriate for a successful client when there was a claim of adverse possession and, therefore, trespass to try title. Declaratory judgment was the other claim he saw in the counter-petition for which he believed attorney's fees might be appropriate.[16] McEvily also testified he did not know about claims for which Foster could not ask for attorney's fees, stating "[t]here might be a claim that was made by the Cullins [sic] for which the defense by [Foster] may not be appropriate for the recovery of attorney's fees." McEvily testified "the segregation was a matter that took place from several of the invoices, and I can tell you what the sum total that has been segregated, but for a specific item, I can't tell you."

---

16. As noted, Foster withdrew his claim for declaratory judgment. *See* note 6, *supra.*

#### c. Foster's argument he is entitled, as a matter of law, to his requested attorney's fees

Citing *Ragsdale*, Foster argues McEvily's testimony—the only testimony on attorney's fees—was "not contradicted by any other witness, or attendant circumstances, [was] clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon," and, therefore, should be "taken as true, as a matter of law." *Ragsdale*, 801 S.W.2d at 882. The *Ragsdale* court, however, also stated: "[W]e do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed." *Id.* The court explained, "For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact." *Id.*[17]

The Cullinses argue McEvily's testimony was contested and discredited through cross-examination. We agree.

As instructed, the jury could consider the following factors in determining a reasonable fee: (1) "the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;" (2) "the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;" (3) "the fee customarily charged in the locality for similar legal services;" (4) "the amount involved and the results obtained;" (5) "the time limitations imposed by the client or by the circumstances;" and (6) "the experience, reputation, and ability of the lawyers performing the services."[18] The jury was also limited to determining a reasonable fee for the trespass-to-try title claim and adverse-possession claims.[19]

Although the Cullinses did not object to McEvily's testimony on the ground that he failed to segregate the permissible fees from those not allowed, the Cullinses vigorously cross-examined McEvily on that issue, eliciting McEvily's admission that he had not reviewed all the documents in the case and could not say what amount had been segregated out for a specific item.[20] McEvily also testified he did not know for which claims Foster could not ask for attorney's fees, stating, "[t]here might be a claim that was made by the Cullins [sic] for which the defense by [Foster] may not be appropriate for the recovery of attorney's fees." Finally, McEvily admitted the amount in controversy was one factor to consider; he acknowledged the land had minimal rental value; and, when asked whether he was aware the value of the trees was in the range of $2,200 to $3,000, stated he understood the value of the trees. The jury had previously heard testimony from Foster's experts that the rental value of the land was $100 per month, the market price at the mill of the trees was close to $3,000, and the cost to cure was $11,300. The Cullinses im-

---

**17.** We note McEvily was not an interested witness in the case. Nevertheless, Foster, in framing his issue, relies on *Ragsdale* and so we analyze it under the standard set forth in that case. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990) (per curiam).

**18.** *Cf. Arthur Andersen v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (listing eight factors).

**19.** *See* note 15, above.

**20.** *Cf. Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (holding failure to object to expert testimony for lack of reliability does not waive challenge to legal sufficiency of the evidence).

peached this testimony on cross examination by eliciting an admission that the parcel was landlocked and the $100 rental was contingent on access from a major road, and if the trees were diseased, that factor would affect their value.

We conclude McElvily's testimony did not rise to the level that would permit an award of an amount of attorney's fees as a matter of law under *Ragsdale*. *See Disbrow v. Healey*, 982 S.W.2d 189, 193–94 (Tex.App.-Houston [1st Dist.] 1998, pet.) (agreeing attendant circumstances created sufficient basis for the jury to award amount less than amount claimed by plaintiff's attorney when (1) attorney testified about what he "understood" were reasonable attorney's fees in county for another attorney who previously worked on client's case; (2) attorney's testimony was general, not concise or clear, with no itemization of time spent on various items; (3) attorney's fees were more than twice the amount of damages client claimed; (4) attorney did not allocate fees between the claims against the two defendants; and (5) attorney's fees were more than twice the amount of one of the defendant's fees); *see also Inwood N. Homeowners' Ass'n v. Wilkes*, 813 S.W.2d 156, 158 (Tex.App.-Houston [14th Dist.] 1991, no writ) (holding amount in controversy in case, $649.44, was attendant circumstance tending to cast suspicion on the uncontradicted evidence); *CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 543 (Tex.App.-Texarkana 1990, no writ) (concluding, when attorney testified regarding hourly rate and approximate hours spent on case but did not offer evidence of exact number of hours, testimony did not offer such exactness as to warrant JNOV increasing jury's award of $5,400 to $7,000).

We overrule Foster's second issue to the extent he seeks rendition of judgment.

### 4. FACTUAL INSUFFICIENCY OF THE EVIDENCE

In his second issue, Foster also invokes language relevant to a factual sufficiency review, *i.e.*, "against the great weight and preponderance of the evidence and ... manifestly unjust," and requests, in the alternative, a new trial on all damages issues, including attorney's fees. Foster's argument may fairly be read as a challenge to the factual sufficiency of the evidence to support the jury's verdict. *See* TEX.R.APP. P. 38.1(e) (providing that "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included"); *see also* TEX. R.APP. P. 38.9 (directing appellate courts to construe briefing rules liberally).

 In reviewing a factual sufficiency challenge to a finding on reasonable attorney's fees, we examine all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *see Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex.App.-San Antonio 2002, pet. denied) (applying *Cain* standard to factual sufficiency challenge to award of attorney's fees resulting from breach of a settlement agreement). For the following reasons, we conclude the evidence is factually insufficient to support the jury's verdict of $5,000 for services through trial and no fees for appeal or petition to the supreme court.

 First, although the Cullinses attacked McEvily's testimony for lack of segregation of fees and raised the issue of the amount in controversy, the Cullinses did not elicit evidence directly casting doubt on the reasonableness of the $200 hourly fee. At that rate, an award of $5,000 reimburses Foster's attorney for only twenty-five hours of work. Second, even if the evidence establishing the rela-

tively small amounts in controversy undercut the reasonableness of the $200 hourly fee, a fee of half that amount would still represent only fifty hours of work. Finally, although McEvily did not segregate appellate fees among the various claims, the award of no fees for appeal overlooks the probability that at least some appellate time would be attributable to the trespass-to-try title and adverse-possession claims.

The jury's verdict on attorney's fees is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176. We therefore sustain Foster's second issue to the extent he seeks a remand for a new trial on the issue of attorney's fees.

5. THE CULLINSES' ARGUMENT FOR REINSTATEMENT OF THE JURY VERDICT

In their issue five, the Cullinses contend the trial court erred in disregarding the jury's verdict and in granting Foster's motion for JNOV. As discussed above, we agree the trial court erred in rendering the JNOV. To the extent the Cullinses may be arguing that this court should render judgment on the jury verdict, however, their argument is without merit. The Cullinses state only that the amount of attorney's fees is a fact issue for the jury to decide, but address neither the legal nor factual sufficiency of the evidence to support the jury verdict. Because, as discussed above, we conclude the evidence is factually insufficient to support the jury's verdict we decline to reinstate it. Accordingly, we overrule the Cullinses' issue five.

### III. CONCLUSION

Having determined Foster did not conclusively prove his ownership of the disputed parcel at the time the Cullinses committed the injurious acts of which Foster complained, we sustain the Cullinses' issue challenging the summary judgment in favor of Foster on liability for trespass, conversion, violation of Texas Natural Resources Code section 151.051, and trespass to try title to the extent Foster sought remedy *other than* title to, and possession of, the disputed parcel. We reverse the judgment in favor of Foster on those claims.

Having determined Foster conclusively proved his ownership of the disputed property at the time of trial, we overrule the Cullinses' issues challenging the summary judgments against them on their claims and in favor of Foster on his trespass to try title claim to the extent Foster sought title to, and possession of, the disputed parcel. We affirm the trial court's judgment as to those claims.

Given our resolution of the Cullinses' issues challenging the summary judgment on liability, we do not reach Foster's issue challenging the award of damages.

Having further determined Foster failed to conclusively prove attorney's fees in the amount to which his expert testified, but that the evidence is factually insufficient to support the amount the jury found to be reasonable, we overrule Foster's second issue in part and sustain it in part. We reverse that portion of the judgment awarding Foster's attorney's fees.

We sever Foster's claims for trespass, conversion, violation of Texas Natural Resources Code section 151.051, attorney's fees, and trespass to try title to the extent Foster sought remedy *other than* title to, and possession of, the disputed parcel, and remand them to the trial court.

We overrule the Cullinses' issues in which they argue for no attorney fees or reinstatement of the jury verdict. Given our resolution of Foster's challenges to the award of attorney's fees, we need not address the Cullinses' challenge to exclusion of their evidence on that issue.