**Reversed and Remanded and Memorandum Opinion filed July 26, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00574-CV

---

**ANNA H. AYERS, Appellant**

**V.**

**TARGET NATIONAL BANK, Appellee**

---

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 967255**

---

## M E M O R A N D U M   O P I N I O N

Appellee, Target National Bank ("Target"), sued appellant, Anna H. Ayers, for breach of contract, seeking to recover the balance allegedly due under a credit-card agreement. Target filed a motion for summary judgment, to which Hill responded. On March 25, 2011, the trial court signed an order granting summary judgment and awarding Target $5,345.25 plus $500 in attorney's fees, costs, and post-judgment interest. In two appellate issues, Ayers challenges the summary judgment. We reverse and remand.

## STANDARD OF REVIEW

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)). If the movant establishes a right to summary judgment, the burden shifts to the non-movant to present evidence raising a material fact issue. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take all evidence favorable to the non-movant as true and indulge every reasonable inference and resolve any doubts in her favor. *Id.*

## ANALYSIS

To prevail on a breach-of-contract claim, a plaintiff must prove (1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Parties form a binding contract when the following elements are present: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555–56 (Tex. App.—Houston [14th Dist.] 2002, no pet.). To be enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties. *McElroy v. Unifund CCR Partners*, No. 14-07-00661-CV, 2008 WL 4355276, at *4 (Tex. App.—Houston [14th Dist.] Aug. 26, 2008, no pet.) (mem. op.)

2

(citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). The material terms of a contract must be agreed upon before a court can enforce the contract. *Id.* (citing *T.O. Stanley Boot*, 847 S.W.2d at 221).

In two issues, Ayers contends (1) the only summary-judgment evidence regarding the terms of the contract at issue was inadmissible, or (2) alternatively, even if all of Target's summary-judgment evidence were admissible, Target failed to prove the terms of the contract.

To support its motion for summary judgment, Target presented (1) the affidavit of its representative, Kevin Bendix, with an attached monthly statement for Ayers's account and her credit-card application, (2) the affidavit of Target's counsel relative to attorney's fees, and (3) Ayers's response to Target's request for admissions.

In his affidavit, Bendix averred,

1. I am a representative of Target National Bank and am authorized to verify current balances due and owing to Target National Bank on credit card accounts.

2. As of the date of this affidavit I have reviewed the records of the above listed person and account, and that the amount due and owing to Target National Bank on this account, over and above all known legal set-offs is $5,345.25.

3. [a statement that Ayers is not known to be in the military]

   That the above information is true to the best of my knowledge, information and belief, and based upon the books and business records of Target National Bank.

In her response, Ayers presented three objections to Target's summary-judgment evidence: (1) Bendix failed to state his averments were based on personal knowledge; (2) the attached monthly statement and credit-card application were not properly authenticated and constituted hearsay, without proof of the business-records exception; and (3) Bendix's averment regarding the balance due was conclusory because it was not supported by any admissible evidence. The trial court overruled all of these objections.

3

On appeal, Ayers reurges the objection that the monthly statement and the application constituted hearsay and were not properly authenticated; as Ayers emphasizes, these documents were not even referenced in Bendix's affidavit. *See* Tex. R. Evid. 803(6), 902(10). Nonetheless, we need not decide whether the documents were admissible because, even if we consider them, Target's summary-judgment evidence was legally insufficient to prove the terms of the credit-card agreement, much less that the amount allegedly due comported with the terms and Ayers breached the agreement by failing to pay this amount.

Significantly, Target did not present the actual cardholder agreement. In its motion and accompanying exhibit list, Target stated the applicable agreement was attached to Bendix's affidavit, but no such agreement was attached. Even if this omission was merely an oversight, as summary-judgment movant, Target bore the burden to establish the terms of the agreement. *See Knott*, 128 S.W.3d at 215–16; *Cullins*, 171 S.W.3d at 530.

Further, in his affidavit, Bendix generally referenced Ayers's "account" but did not mention any agreement, set forth any terms, or aver that Ayers agreed to be bound by any terms. Bendix's general assertion that $5,345.25 was "due and owing" on the account did not demonstrate how this balance was calculated, whether the calculations comported with the terms of any agreement, and whether Ayers agreed to pay such balance under an agreement.

Moreover, contrary to the reference in Target's motion and exhibit list to "account statements" in the plural, Target presented only one statement. This statement, issued shortly after Target filed suit, showed a balance of $5,345.25 carried over from the previous statement, without further activity. The statement does not contain any terms of an agreement, indicate how the balance was calculated, including various charges and fees, or show that the balance was calculated per the terms of an agreement.

For example, an applicable interest rate is a material term of a credit-card agreement. *See McElroy*, 2008 WL 4355276, at \*4 (citing *T.O. Stanley Boot*, 847 S.W.2d at 221). The monthly statement reflects "Total fees charged in 2010" of $156

4

and "Total interest charged in 2010" of $375.21. Because Target presented only one statement, it is unclear whether it also charged interest and fees for previous years, considering that Ayers applied for the card in 2004. Regardless, Target presented no evidence demonstrating Ayers agreed to pay interest and fees, much less how the interest and fees would be calculated, such as the applicable interest rate. The monthly statement also contains the following general language, "Your Annual Percentage Rate (APR) is the annual interest rate on your account"; but, again, there is no evidence demonstrating the APR or interest rate that Ayers allegedly agreed to pay. In fact, at one point the statement reflects an APR of "0.00%" for purchases and cash advances. Some of the language above this information is illegible; thus, it is unclear whether Target was no longer charging interest on the balance or whether this 0.00% APR is inconsistent with the other information on the statement showing interest and fees *were* charged, at least for some portion of 2010.

Additionally, a portion of the form language on the credit-card application is illegible, and all the form language is apparently written in Spanish, but Target provided no translation to support its motion for summary judgment. The only legible portion of the application that is written in English is the contact and identification information apparently completed by Ayers and her purported signature. The credit-card application does not contain any legible terms of an agreement that are written in English.

Target asserts that, in response to its request for admissions, Ayers admitted "an agreement was formed and breached." We disagree that Ayers admitted she breached the agreement. Specifically, Ayers admitted the following:

You and [Target] entered into and [sic] agreement.

[Target] extended you credit.

Using the credit extended by [Target], you made purchases from third parties.

5

You made no objections to any charges under the Agreement despite receiving notice of such charges more than sixty (60) days prior to the filing of this lawsuit.

You have failed to repay [Target].

However, Ayers responded that she was unable to admit or deny the following without an opportunity to review the original cardholder agreement and any amendments thereto:

Under the Agreement, you became bound to pay [Target] the amounts of any purchases you made, plus additional charges.[1]

The Agreement provides that you may object, in writing and within sixty (60) days of notice of the charge, to any disputed charges under the Agreement.

The terms of the Agreement control the accrual of additional charges, interest, and other amounts.

Ayers also responded that she was unable to admit or deny the following without an opportunity to review a complete payment history and all monthly statements on the account:

The unpaid balance under the Agreement became due on or before April 23, 2010.

The current balance due, owing, and unpaid under the Agreement, after allowing all just and lawful payments, credits, and offsets totaled not less than $5,345.25.

Thus, at most, Ayers admitted she had a credit-card agreement with Target, made purchases on the account, did not object to any charges when she received notice, and "failed to repay" Target for some amount. Absent is any admission regarding Ayers's specific obligations under the agreement. Because the "failed to repay" admission is so general and not linked to any other admissions, it is unclear what amount Ayers admittedly "failed to repay." To the extent "failed to repay" refers to purchases made on the card, Ayers did not further admit she was bound under the agreement to pay such

---

[1] In its appellate brief, Target incorrectly asserts that Ayers admitted this fact.

charges or the total amount claimed by Target in this suit. As mentioned above, the monthly statement indicated that the balance claimed by Target included interest and other fees. Without the benefit of reviewing the agreement and all monthly statements, Ayers declined to admit she was bound to pay any amounts, including "additional charges," or that the terms of the agreement control these "additional charges, interest, and other amounts." To the extent "failed to repay" refers to the total amount claimed by Target in this suit, Ayers's admission does not constitute an acknowledgement that the amount is actually owed under the terms of the agreement—again, an admission Ayers declined to make absent an opportunity to review the agreement. In its motion, Target cited Ayers's admission that she did not object to any charges. However, absent proof of the terms of the agreements, there is no evidence demonstrating the consequences of Ayers's failure to object; i.e. whether she is bound to pay any such undisputed charges, as suggested by Target.

The present case is similar to *McElroy*, in which our court held the evidence was legally insufficient to support the trial court's finding after a bench trial that a valid credit-card contract existed. 2008 WL 4355276, at *4–5. In *McElroy*, the assignee creditor proffered the following evidence: (1) an affidavit of its employee; (2) a signature card for the account; (3) an affidavit of an employee of the account assignor; and (4) numerous monthly account statements, reflecting purchases and payments made against the account. *Id.* at *1, 4. However, the creditor did not proffer the cardholder agreement or any other document establishing agreed terms for the account, such as the applicable interest rate or the method of determining finance charges. *Id.* at *4. Further, the monthly statements showed "widely varying" interest rates, and the signature card did not contain the missing contractual terms. *Id.* Consequently, the creditor's evidence lacked an express written agreement describing the definite, agreed terms between the cardholder and creditor, and there was no "discernable demonstration" of the cardholder's intent to be bound by a specific agreement. *Id.* In fact, the court indicated, when upholding the creditor's recovery under a separate quantum-meruit theory, that the cardholder admitted the existence and use of the account. *See id.* at *6. Although the

7

court did not specifically discuss these admissions relative to the breach-of-contract theory, the admissions obviously did not alter the court's conclusion that the creditor failed to prove a valid contract. *See id.* at \*4–5;[2] *see also Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that, although creditor's summary-judgment evidence, including affidavits and account statements, might indicate parties had reached an agreement of some kind, evidence was insufficient to establish terms of valid contract as a matter of law because creditor failed to produce actual credit-card agreement or any other document establishing agreed terms, including applicable interest rate or method for determining finance charges).

The *McElroy* court distinguished its case from *Winchek v. American Express Travel Related Services Co., Inc.*, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.), in which the First Court of Appeals held that the creditor established existence of a contract. *See McElroy*, 2008 WL 4355276, at \*5. The *Winchek* creditor presented a copy of the "Personal Card Member Agreement," billing statements, and an affidavit from the creditor's Manager of Credit Operations. 232 S.W.3d at 202–04. The "Personal Card Member Agreement" expressly stated that retention or use of the card demonstrated the cardholder's agreement to its terms and included terms for calculating interest and other fees. *Id.* at 203. The creditor's affiant averred that "[b]y accepting and using the Personal Card, [the cardholder] agreed to all of the terms and conditions set forth in the Personal Card Member Agreement . . . ." *Id.* at 202–03.

Similar to the situations in *McElroy* and *Williams*, it is undisputed there was a credit-card agreement of some kind between Target and Ayers and she made purchases on the card, but the significant factor is the lack of any evidence proving the terms of that agreement or Ayers's intent to be bound by a specific agreement. Therefore, the evidence that was sufficient in *Winchek* is absent in the present case. *See Jaramillo v.*

---

[2] Unlike the *McElroy* creditor, Target pleaded only breach of contract—not quantum meruit or any other alternative theory. *See* 2008 WL 4355276, at \*1, \*5–6.

8

*Portfolio Acquisitions, LLC*, No. 14-08-00939-CV, 2010 WL 1197669, at \*5 (Tex. App.—Houston [14th Dist.] Mar. 30, 2010, no pet.) (mem. op.) (citing *McElroy*, *Williams*, and *Winchek* when noting that our court and sister court have distinguished between cases where cardholder agreement is entered into evidence and where there is no cardholder agreement). In fact, in its motion for summary judgment, Target cited *Winchek* as holding "a valid contract was formed by evaluating the terms of the cardmember agreement" and stated pertinent language in Ayers's agreement was nearly identical to language in the *Winchek* agreement regarding use of the credit card constituting acceptance of the agreement. However, as discussed above, Target did not present the cardholder agreement or demonstrate the language was analogous to the language in the *Winchek* agreement.

Accordingly, we conclude the trial court erred by granting summary judgment in favor of Target. We sustain Ayers's second issue, reverse the trial court's judgment, and remand for further proceedings.


/s/     Charles W. Seymore
Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Brown.